**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL SHOPMEN PENSION FUND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08-CV-0132 (RCL) |
| ) | |
| GEORG FISCHER DISA d/b/a DISA ) | |
| INDUSTRIES, INC ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES**

Defendant DISA Industries, Inc. answers Plaintiff National Shopmen Pension Fund's Complaint as follows:

1.  Jurisdiction is conferred upon this Court by Section 301 of the Labor Management Relations Act (29 U.S.C. § 185), and Sections 502 and 515 of the Employee Retirement Income Security Act, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (29 U.S.C. § 1132 and § 1145) and 28 U.S.C. § 1331.

**ANSWER:**

No response to this paragraph is required because it alleges legal conclusions. To

the extent that a response is otherwise required, Defendant denies all of the

allegations in this paragraph.

2.  Plaintiff, National Shopmen Pension Fund (hereinafter the "Fund"), is a joint labor-management pension fund established pursuant to Section 302(c) of the Labor Management Relations Act (29 U.S.C. § 186(c)). Its purpose is to provide pension, retirement and related benefits to the eligible employees of employers who contribute to the Fund pursuant to various collective bargaining agreements with affiliated Shopmen's Local Unions of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO. Plaintiffs, Walencik, Kerr, King, O'Connell, and Bruce, are Trustees of the Fund. The Fund is administered in the District of Columbia.

**ANSWER:**

Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph and on that basis denies the same.

## Introduction

3. This claim is brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 et seq. Plaintiffs seek a judgment awarding withdrawal liability owed the Fund, interest on the delinquent withdrawal liability payments, liquidated damages, attorneys' fees and costs.

**ANSWER:**

Defendant admits that Plaintiff is attempting to bring a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 et seq. and that Plaintiff seeks a judgment awarding withdrawal liability, interest on the withdrawal liability, liquidated damages, attorneys' fees and costs.

4. This Court has jurisdiction over this action under Sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c). Venue lies in this Court under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ I1132(e)(2) and 1451(d), in that the Fund is administered at its principal place of business in the District of Columbia.

**ANSWER:**

Defendant admits that this Court has jurisdiction over this action. Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations that Plaintiff's principal place of business is in the District of Columbia and that venue lies in this Court, and on that basis denies the same.

## Parties

5. Plaintiffs are comprised of individual trustees who are "fiduciaries" with respect to the Fund as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are collectively the "plan sponsor" within the meaning of Section 4001(a)(10)(A) of ERISA,

29 U.S.C. § 1301(a)(10)(A). The Fund is a multiemployer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3). The Trustees administer the Fund at 1750 New York Avenue, N.W., Washington, DC 20006-5301. Pursuant to Sections 502(a)(3), 4221(b)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3), 1401(b)(1), and 1451(a)(1), Plaintiffs are authorized to bring this action on behalf of the Fund, its participants, and beneficiaries.

**ANSWER:**

>   No response is required to the allegations of this paragraph that purport to apply the definitions or statutory terms of ERISA because they allege legal conclusions. To the extent that a response is otherwise required, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph and on that basis denies the same.

   6.    Defendant, Georg Fischer Disa, Inc. d/b/a Disa Industries, Inc. ("Defendant"), is an employer in an industry affecting commerce within the meaning of Sections 3(5) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. Sec. 1002(5)), and the Labor Management Relations Act of 1947 (29 U.S.C. Sec. 151 et seq.)

**ANSWER:**

>   Defendant admits the allegations of Paragraph 6 of the Complaint.

   7.    Defendant is a corporation organized under the laws of Illinois, with a principal office located at 80 Kendall Point Drive, Oswego, Illinois 60543. Defendant and Shopmen's Local Union No. 508 of the International Association of Bridge, Structural and Ornamental Iron Workers (affiliated with AFL-CIO) (hereinafter "Union" or "Local 508") were parties to and were bound by successive collective bargaining agreements requiring contributions to the Fund for employees covered thereby.

**ANSWER:**

>   Defendant admits that it is a corporation organized under the laws of Illinois, with a principal office located at 80 Kendall Point Drive, Oswego, Illinois 60543. Defendant admits that it was a party to a collective bargaining agreement ("CBA") with Shopmen's Local Union No. 508 of the International Association of Bridge, Structural and Ornamental Iron Workers ("Union") which required

3

Defendant to make contributions for the two years of 2001 and 2002. To the extent that the allegations of Paragraph 7 are not admitted, Defendant denies the remaining allegations in this paragraph.

**Count I: Claim by Plaintiff National Shopmen Pension Fund Against Defendant for Withdrawal Liability**

8.  The allegations contained in paragraphs 1 through 7 are incorporated herein by reference.

**ANSWER:**

Defendant incorporates by reference its responses to Plaintiff's allegations set forth in paragraphs 1 through 7 as if fully restated herein.

9.  ERISA, §§ 4201-4225, 29 U.S.C. §§ 1381 - 1461 establishes withdrawal liability for multiemployer plans. ERISA, § 4201, 29 U.S.C § 1381, establishes that if an employer withdraws from a multiemployer plan then the employer is liable to the plan for the amount determined to be withdrawal liability.

**ANSWER:**

Defendant admits the allegations of Paragraph 9 of the Complaint.

10. On or about December 2001, Defendant effected a "complete withdrawal" from the Fund within the meaning of ERISA § 4203(a), 29.U.S.C. §1383(a).

**ANSWER:**

No response to this paragraph is required because it alleges legal conclusions.

11. Section 4201 of ERISA and the Fund's Rules and Regulations require that withdrawal liability be assessed by the Fund against contributing employers who withdrew from it after April 28, 1980 (29 U.S.C. § 1381).

**ANSWER:**

No response to this paragraph is required because it alleges legal conclusions.

12. Withdrawal liability is determined by allocating a portion of the Fund's unfunded vested benefits to the withdrawing employer pursuant to one of the methods authorized by ERISA. The Trustees of the Fund have adopted the "attributable rule" for

4

determining withdrawal liability, which is set forth in ERISA § 4211(c)(4) (29 U.S.C. § 1391(c)(4)).

**ANSWER:**

>Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of Plaintiff's allegation that it has adopted the "attributable rule" for determining withdrawal liability and on that basis denies the same. No response to the remaining allegations of this paragraph is required because they allege legal conclusions

13. The Fund's actuarial consultants, the Segal Company, calculated the withdrawal liability of Defendant.

**ANSWER:**

>Defendant admits that Plaintiff provided Defendant with documents that suggest that the Segal Company is Plaintiff's actuarial consultant and that it calculated Defendant's withdrawal liability. To the extent that these documents do not speak for themselves, Defendant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph and on that basis denies the same.

14. By letter to Defendant, dated June 21, 2006, the Fund Administrator notified Defendant of their withdrawal liability to the Fund in the amount of $372,472.00 and established a schedule for the payment of withdrawal liability, with interest on that payment, as required by ERISA Section 4219 (29 U.S.C. § 1399). That schedule provided that Defendant pay $652.00 per month for 240 months resulting in a total payment of $127,761.00, the twenty-year repayment plan limit under ERISA Section 4219 (c)(1)(B). The first payment was due on July 16, 2006.

**ANSWER:**

>Defendant admits that almost five full years after Defendant withdrew from the fund, Plaintiff first notified Defendant of its withdrawal liability owed in the

5

> amount of $372,472.00 and established a schedule for the payment of this withdrawal liability, with interest. Defendant also admits that this schedule required Defendant to pay $652.00 per month, and no more, for 240 months resulting in a total payment of $127,761.00 in accordance with the twenty-year repayment plan limit under Section 4219(c)(1)(B) of ERISA. Defendant further admits that its first payment was due on July 16, 2006 and that it has promptly and timely made each of its scheduled monthly payments of $652.00 in accordance with the express terms of the notice and schedule of repayment issued by Plaintiff on June 21, 2006.

15.  By letters dated January 24, 2007 and February 15, 2007, Fund Counsel notified Defendant's counsel of an error made in calculating the adjusted monthly payment and advised Defendant to pay $978.00 per month instead of $652.00 and to make a lump-sum payment in the amount of $1,956.00 representing the underpaid amounts for the prior six months. The letters advised Defendant's counsel to instruct Defendant to increase its monthly withdrawal liability payments due to the Fund in accordance to the statutory payment schedule.

**ANSWER:**

> Defendant admits that on January 24, 2007, Plaintiff's attorney sent Defendant's counsel a letter, attached hereto as Exhibit A, in which he claimed that the Fund made "an error" in calculating Defendant's adjusted monthly payments and sought an unsubstantiated increase in the amount of these payments to $978.00 per month instead of $652.00 per month and additionally sought to require Defendant to make a lump-sum payment of $1,956.00. Defendant further admits that one of its attorneys sent Plaintiff's counsel a responsive letter, dated February 7, 2007 and attached hereto as Exhibit B, in which Defendant requested the basis for this sudden increase, including: (1) the grounds for Plaintiff's belief that an error was made; (2) how and when the alleged error was discovered; (3) the extent to which

6

Plaintiff's new calculations involved the exercise of discretion or assumptions of any kind; and (4) the authority on which Plaintiff relied to recalculate the withdrawal liability and attempt to require increased payments.  Defendant also admits that Plaintiff's *only* response to Defendant's inquiries was a February 15, 2007 letter and spreadsheet of calculations, attached hereto as Exhibit C, which clearly identified that Defendant owed contributions only for the years 2000 and 2001 and that the contribution for any third year was $0.00.  Defendant also admits that in this letter, Plaintiff falsely and without any factual support or justification  asserted that  it made a "transposition error" but did not respond to any of Defendant's reasonable inquiries or provide any authority by which it could seek increased monthly payments.  Defendant additionally admits that these three letters constitute the *only* communications between the parties on the issue of increased withdrawal liability payments and the purported grounds therefor, and that Plaintiff did not attempt to respond to Defendant's inquiries or otherwise communicate with Defendant prior to filing this lawsuit.  Defendant admits that Plaintiff stated in its letters, without explanation, that Defendant's counsel should "instruct" Defendant to increase its monthly payments.  To the extent that the allegations of Paragraph 7 are not admitted, Defendant denies the remaining allegations in this paragraph.

16. Defendant has continued to pay the $652.00 monthly amount.

**ANSWER:**

Defendant admits that it has timely continued to pay the amount of $652.00 per month because Plaintiff lacks jurisdiction or any authority to change the amount of withdrawal liability owed and because the "adjusted monthly payment" of $978.00 per month clearly contradicts the express language of Section 4219 of ERISA (29 U.S.C. § 1399), Plaintiff's own rules for calculating withdrawal liability payments, and the explicit terms of Plaintiff's initial and binding notice of the amount of withdrawal liability owed.

17. The full amount of delinquent withdrawal liability payments as of the date of this filing is $6,194.

**ANSWER:**

Plaintiff denies that there is any delinquent withdrawal liability owed.

18. Under ERISA §§ 502, 515, 4221(d) and 4301(b) (29 U.S.C. §§ 1132, 1145 and 1401(d), 1451(b)) and the Rules and Regulations Defendant is liable for interest on the delinquent amount at the rate prescribed by Section 6621 of the Internal Revenue Code from the date due until date paid, liquidated damages equal to 20% of the withdrawal liability, and attorneys' fees and costs.

**ANSWER:**

Plaintiff denies that there is any delinquent withdrawal liability owed and it denies that it is liable for any interest, liquidated damages, or attorneys' fees and costs.

**Prayer for Relief**

WHEREFORE, Plaintiffs pray for the following relief against Defendant:

**ANSWER:**

Defendants deny that Plaintiff is entitled to the relief sought or any other relief in this action.

a) Judgment in the full amount of withdrawal liability owed the Fund;

**ANSWER:**

Defendant denies the allegations of Paragraph a) of the Prayer for Relief.

b) Interest on the delinquent withdrawal liability payments at the rate prescribed by Section 6621 of the Internal Revenue Code;

**ANSWER:**

Defendant denies the allegations of Paragraph b) of the Prayer for Relief.

c) Liquidated damages in the amount of 20% of the delinquent amount;

**ANSWER:**

Defendant denies the allegations of Paragraph c) of the Prayer for Relief.

d) An award of attorneys' fees and costs of collection incurred in connection with collection of the delinquent withdrawal liability; and

**ANSWER:**

Defendant denies the allegations of Paragraph d) of the Prayer for Relief.

e) Such other and further relief as this Court deems appropriate.

**ANSWER:**

Defendant denies the allegations of Paragraph e) of the Prayer for Relief.

Each and every allegation in Plaintiff's Third Amended Complaint not specifically and expressly admitted above is denied.

## FIRST AFFIRMATIVE DEFENSE

1. Plaintiff lacks the authority or jurisdiction to increase the withdrawal liability amounts owed or to seek any such increase once the statutorily mandated Notice has been delivered to a withdrawing employer and thus Plaintiff's Complaint fails to state a claim for which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

2. Plaintiff's claims are barred, in whole or in part, by equitable estoppel and/or the doctrine of laches. Plaintiff refused to respond to Defendant's reasonable request for information as to the grounds, calculation, and authority for any increase in withdrawal liability payments. Additionally, Plaintiff did not correspond with Defendant regarding these issue for almost a full year or otherwise indicate that the issue remained outstanding before it filed this lawsuit.

## THIRD AFFIRMATIVE DEFENSE

3. The Complaint fails to allege facts, or a cause of action, sufficient to support a claim of interest, liquidated damages, or attorney's fees, and to the extent that such claims do exist, they are barred by the doctrine of equitable estoppel.

## FOURTH AFFIRMATIVE DEFENSE

4. Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE

5. Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of unclean hands because Plaintiff's counsel knew or should have known that he misrepresented in his letter to Defendant's counsel that the basis for the increase in monthly payments is that a mere "transcription error" had been made when, in truth and in fact, the Plaintiff's own document reveals the falsity of this claim.

## SIXTH AFFIRMATIVE DEFENSE

6. Plaintiff is barred, in whole or in part, from recovering the relief sought because Plaintiff failed to take all reasonable, necessary, and appropriate action to mitigate any purported damages allegedly resulting from the matters set forth in its Complaint.

        Respectfully submitted,

        _____/s/_____
William G. Miossi (Bar No. 445265)
Winston & Strawn LLP
1700 K St., NW
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 (fax)

Counsel for Defendant

March 12, 2008

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of March 2008, I caused a true and correct copy of the foregoing Corporate Disclosure Statement to be served, electronically, on the following:

>Marc H. Rifkind
>Slevin & Hart, P.C.
>1625 Massachusetts Avenue, NW
>Suite 450
>Washington, D.C. 20036

_____/s/_____
William G. Miossi

DC:550826.1

Case: 1:08-cv 00132 (RCL)

# EXHIBIT A

1/31/2007
Emailed G. Malova.

# SLEVIN & HART, P.C.

Attorneys at Law
1625 Massachusetts Avenue, N.W., Suite 450
Washington, D.C. 20036
(202) 797-8700
Fax (202) 234-8231

MARC RIFKIND
Member of the Firm

Writer's Direct Dial: (202) 797-2203
Mrifkind@slevinhart.com

January 24, 2007

Gregory Malovance
Winston & Strawn, LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Re:   DISA Industries, Inc – Withdrawal Liability Assessment

Dear Mr. Malovance:

The National Shopmen Pension Fund has determined that it made error in calculating DISA, Industries, Inc.'s withdrawal liability payment schedule. The monthly amount should be $978.00, instead of $652.00. A copy of the Fund's calculations is attached.

As of this date, the Fund has have received six payments from Disa Holding Corp totaling $3,912.00. Please instruct your client to increase its monthly payments accordingly and to remit with the January 2007, the additional $1,956 owed for the 6 prior months.

Sincerely,

Marc Rifkind

MHR:msj:150.206

Enclosures

cc:   A.H. Higgs, Jr., Administrator
      Natalie Duritsa

28501

Case: 1:08-cv 00132 (RCL)

# EXHIBIT B

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND<br><br>BUCKLERSBURY HOUSE<br>3 QUEEN VICTORIA STREET<br>LONDON, EC4N 8NH<br><br>333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 | 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703<br><br>(312) 558-5600<br><br>FACSIMILE (312) 558-5700<br><br>www.winston.com | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193<br><br>21 AVENUE VICTOR HUGO<br>75116 PARIS, FRANCE<br><br>101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-58{<br><br>1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817 |

GREGORY J. MALOVANCE
(312) 558-5892
gmalovance@winston.com

February 7, 2007

Marc Rifkind
Slevin & Hart, P.C.
Attorneys at Law
1625 Massachusetts Avenue, N.W., Suite 450
Washington, D.C. 20036

Re:    DISA Industries, Inc. – Withdrawal Liability Assessment

Dear Marc:

Thank you for your letter dated 24 January, 2007 in which you inform me that the National Shopmen Pension Fund claims to have made an error in calculating DISA's withdrawal liability. However, all I received was the letter, itself, with no attachments. Please send me a copy of the Fund's calculations as you originally intended.

In addition, please provide me with a detailed explanation from the Fund as to: (1) why it believes that an error was made; (2) how and when this alleged error was discovered; (3) the extent to which the Fund's new calculation of liability involves the exercise of discretion and/or assumptions of any kind; and (4) the authority on which the Fund relies to recalculate withdrawal liability and attempt to collect increased payments. Finally, please provide me with copies of all documents relied upon in any way by the Fund in making both the initial and revised calculation of liability.

Once we have received this information, we will be able to evaluate the Fund's assertion that an error was made and that the Fund is entitled to request additional payments after making its initial determination of liability. Let me know if you have any questions.

Sincerely,

Gregory J. Malovance

cc:    Randall A. Miller
GJM:lft

Case: 1:08-cv 00132 (RCL)

# EXHIBIT C

*2/22/2007 - Received*
*Emailed G. Malovance.*

# SLEVIN & HART, P.C.

Attorneys at Law
1625 Massachusetts Avenue, N.W., Suite 450
Washington, D.C. 20036
(202) 797-8700
Fax (202) 234-8231

MARC RIFKIND
Member of the Firm

Writer's Direct Dial: (202) 797-2203
Mrifkind@slevinhart.com

February 15, 2007

Gregory Malovance
Winston & Strawn, LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

    Re:    DISA Industries, Inc – Withdrawal Liability Assessment

Dear Mr. Malovance:

    This letter responds to yours dated February 7, 2007. The National Shopmen Pension Fund office discovered that an error had been made in transposing the monthly payment amount from the spreadsheet, which calculated DISA's withdrawal liability payment schedule under ERISA Section 4219, to the Fund's June 26, 2006 notice to DISA of its withdrawal liability and the statutory payment schedule. A copy of that spreadsheet is enclosed. There has been no change, whatsoever, to the Fund's calculation of DISA's underlying withdrawal liability.

                                              Sincerely,

                                              Marc Rifkind

MHR:msj:150.206

Enclosure

cc:    A.H. Higgs, Jr., Administrator
        Natalie Duritsa

33730

## NATIONAL SHOPMEN PENSION FUND

### Withdrawal Liability for Withdrawals 7/1/2001 through 6/30/2002

| | | | |
|---|---|---|---|
| (a) | Employer | ................................................................ | Georg Fisher Disa Inc. |
| (b) | Date of withdrawal | ................................................................ | December 31, 2001 |
| (c) | Value of vested benefits | ................................................................ | $436,784.00 |
| (d) | Allocated assets | ................................................................ | $64,312.00 |
| (e) | Withdrawal liability = (c) - (d) | ................................................................ | $372,472.00 |
| (f) | Deductible | ................................................................ | $0.00 |
| (g) | Amount to amortize | ................................................................ | $372,472.00 |
| (h) | Hours of contributions, fiscal years ended 6/30: | | |

| | 1992 | 0.00 | 1995 | 0.00 | 1998 | 0.00 | 2001 | 52,856.00 |
|---|---|---|---|---|---|---|---|---|
| | 1993 | 0.00 | 1996 | 0.00 | 1999 | 0.00 | | |
| | 1994 | 0.00 | 1997 | 0.00 | 2000 | 40,408.00 | | |

| | | |
|---|---|---|
| (i) | Highest consecutive three-year average hours | 46,632 |
| (j) | Highest contribution rate prior to termination | $0.25 |
| (k) | Required annual payment = (i) X (j) | $11,658.00 |
| (l) | Amortization ratio = g/k = Number of Years | 31.949906 |
| (m) | Largest value in Table Column I which is less and (l) | **10.959078** |
| (n) | Number of years for value (m) | **20** |
| (o) | Amount amortized in (n) years = (k) x (m) | $127,761 |
| (p) | Amount left to amortize = (g) - (o) | $244,711 |
| (q) | Table Column II value for (n) years | **4.247851** |
| (r) | Amount ot amortize in the final year = (p) X (q): show 0 if (n) = 20 | 0 |
| (s) | Quarterly payment = (k) divided by 4 | $2,915 |
| (t) | Adjusted monthly payment = (s)/2.98201 | $978 |
| (u) | Full quarters to pay in final year = (r)/(s), truncate the result (integers only) | 0 |
| (v) | Amount to pay in final quarter (r) - [(u) X (s)] | 0 |
| (w) | Full monthly payments in final quarter = (v)/(t), | 0.00000 |
| | truncate the result (integers only) | 0 |
| (x) | Number of full montly payments = [12 x (n)] + [3 x (u)] + (w) | 240 |
| (y) | Final payment = v - [(w) x (t)] | $0.00 |

Employer payment schedule:

| | | | | | | |
|---|---|---|---|---|---|---|
| $978 per month for | 240 months plus a | final payment | 0 | $234,720.00 | 234720.00 |

Note: Monthly payments are adjusted for interest to be equivalent to quarterly payments (PBCG letter ruling 85-18).

Principle payment based on Total payout

$81,620.00

$122,159.98    $64,233.58