**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL SHOPMEN PENSION FUND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 08-CV-0132 (RCL) |
| ) | |
| GEORGE FISCHER DISA d/b/a DISA ) | |
| INDUSTRIES, INC., ) | |
| ) | |
| Defendant. | |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant DISA Industries, Inc. ("DISA") moves for judgment on the pleadings and a dismissal with prejudice of Plaintiff's Complaint. In support of its motion, DISA respectfully refers the Court to the attached Memorandum and shows:

1. This dispute is about the amount of money that DISA is required to pay to Plaintiff each month over a twenty-year period as a so-called "withdrawal liability" resulting from DISA's decision to close a facility in 2001.

2. The total amount of withdrawal liability was determined by Plaintiff to be $372,472. Compl. ¶ 14; Answer ¶ 14.

3. Pursuant to the procedures set forth in ERISA, DISA has challenged this determination and does not believe that it should be required to pay any amount of withdrawal liability. See 29 U.S.C. § 1401. As also required by federal law, this challenge has been submitted to arbitration and, as such, the underlying issue of whether DISA may properly be required to pay any withdrawal liability is not before this Court. Id.; e.g., I.A.M. Nat'l Pension

Fund v. Clinton Engines Corp., 825 F.2d 415 (D.C. Cir. 1987) (compulsory arbitration provisions of MPAA aim at Congress' intent "to bring about expeditious resolutions" and avoid "unnecessarily cumbersome and costly" litigation); see also Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Courtad Constr. Sys., Inc., 439 E.D. Va. (2006) (disputes surrounding the propriety of a complete withdrawal assessment are statutorily mandated).

4.      The sole issue that is properly before this Court concerns the amount of money that DISA is required to pay each month unless and until an arbitrator rules in favor of DISA.

5.      On this point, Plaintiff sent a letter to DISA dated June 21, 2006 – almost five full years after DISA closed one of its facilities, thereby "withdrawing" from the multiemployer pension fund administered by Plaintiff.  Compl. ¶ 14; Answer ¶ 14.

6.      Therein, Plaintiff notified DISA of its claim for a withdrawal liability in the amount of $372,472.  However, ERISA Section 4219 expressly limits the amount of money that a withdrawing employer may be required to pay each month and expressly notes that "an employer's liability shall be limited to the first 20 annual payments."  29 U.S.C. § 1399(c). ERISA Section 4219 also expressly sets forth a mandatory formula for determining the amount of each monthly payment.  Id.

7.      Pursuant to the statutory formula mandated by ERISA Section 4129(c), Plaintiff's June 21, 2006 letter notified DISA that it should pay $652.00 each month for 240 months, resulting in a total payment of $127,761.00.  Compl. ¶ 14; Answer ¶ 14.

8.      There is no dispute that DISA has, in fact, complied at all times with Plaintiff's request to pay $652.00 each month and that DISA will continue to do so subject to the ultimate resolution of DISA's defense raised in the pending arbitration proceeding.  Compl. ¶¶ 14, 16; Answer ¶¶ 14, 16.

9. Notwithstanding DISA's full and complete compliance with the terms of Plaintiff's June 21, 2006 letter, Plaintiff's counsel sent one of DISA's attorneys a letter dated January 24, 2007 in which he claimed that Plaintiff made "an error" in calculating Defendant's monthly payments, asserting that the "monthly amount should be $978.00 instead of $652.00." Compl. ¶ 15; Answer ¶ 15, Ex. A.

10. DISA's counsel promptly responded to this letter and asked for a detailed explanation from Plaintiff as to: (1) why it believes that an error was made; (2) how and when this error was discovered; (3) the extent to which Plaintiff's new calculation of liability involves the exercise of discretion and/or assumptions of any kind; and (4) the authority on which Plaintiff relies to recalculate withdrawal liability and attempt to collect increased monthly payments. DISA also requested copies of all documents relied upon in any way by Plaintiff in making both the initial and revised calculation of liability. Compl. ¶ 15; Answer ¶ 15, Ex. B.

11. Plaintiff's counsel responded by letter dated February 15, 2007. Therein, none of the information requested by DISA was provided and none of the questions asked were addressed, <u>except</u> for the bare assertion that Plaintiff's "office discovered that an error had been made in transposing the monthly payment amount from the spreadsheet . . . to the Fund's June 26, 2006 notice to DISA." A copy of this spreadsheet was enclosed as well. Plaintiff ignored DISA's request for an explanation as to the authority on which Plaintiff relies to change its position as to the amount of monthly payments DISA is required to make pursuant to ERISA Section 4219(c). Answer ¶ 15, Ex. C.

12. These three letters constitute the <u>only</u> communications between the parties on the issue of Plaintiff's attempt to change its position and increase the amount of Defendant's monthly payments. Plaintiff has not provided DISA with any authority by which it could do so

3

and has not provided DISA with the information that was reasonably requested. Instead, Plaintiff did <u>nothing</u> for a period of approximately one year until it filed its Complaint without notice. Answer ¶ 15.

13.     Plaintiff's own document – the spreadsheet – plainly shows that there was no "transposition error" as falsely asserted in the February 15, 2007 letter from Plaintiff's attorney. Instead, Plaintiff imposed a clear change of position as to how to interpret and apply the formula mandated by ERISA Section 4219. Answer at Ex. C. However, Plaintiff has no authority to <u>change</u> its position and attempt to increase the amount of Defendant's monthly payments once it has made the initial determination of liability and provided notice as required by statute. <u>See</u> 29 U.S.C. §1399. As such, its attempt to increase the amount of monthly payments from $652.00 to $978.00 has no legal force or effect.

14.     In addition, Plaintiff's attempt to require DISA to pay $978.00 each month is in direct and irreconcilable conflict with the express, clear and unambiguous language contained in ERISA Section 4219(c). In stark contrast, Plaintiff's <u>initial</u> calculation of $652.00 is fully consistent with the formula mandated by ERISA Section 4129(c). <u>See</u> 29 U.S.C. § 1399(c). Plaintiff's claim violates the plain meaning of ERISA Section 4219 (c) and, as such, is not enforceable.

WHEREFORE, Plaintiff's Complaint should be dismissed in its entirety, with prejudice, and judgment on the pleadings should be entered in favor of Defendant.

                        Respectfully submitted,

                        _____/s/_____

                        William G. Miossi (Bar No. 445265)
                        Winston & Strawn LLP
                        1700 K St., NW
                        Washington, D.C. 20006
                        (202) 282-5000
                        (202) 282-5100 (fax)

                        Counsel for Defendant

May 30, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL SHOPMEN PENSION FUND,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)  No. 08-CV-0132 (RCL)<br>)<br>GEORGE FISCHER DISA d/b/a DISA  )<br>INDUSTRIES, INC.,  )<br>)<br>Defendant.  | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant DISA Industries, Inc. ("DISA") submits in Memorandum in Support of its Motion for Judgment on the Pleadings.

**I.   STATEMENT OF FACTS**

Plaintiff in this case is a multiemployer pension fund. Defendant DISA Industries, Inc. ("DISA") was a party to a collective bargaining agreement that required DISA to make contributions to this pension fund for two years (2000 and 2001). When DISA closed a facility that was covered by this labor contract, Defendant's obligation to make any further pension fund contributions ceased. This triggered what is known as a "complete withdrawal" from the fund.

There is no dispute that DISA did everything it was required to do in making the required pension contributions in 2000 and 2001. Nevertheless, ERISA establishes a procedure for multiemployer pension funds like Plaintiff to determine whether DISA's complete withdrawal caused it to incur what is known as a statutory withdrawal liability. Plaintiff did

nothing for five years after DISA withdrew. Then, in June 2006, Plaintiff for the first time told Defendant that there would be a withdrawal liability of $372,472.

ERISA Section 4219 expressly limits the amount that an employer like DISA may be required to pay each month and also expressly states that "the employer's liability shall be limited to the first 20 annual payments" determined by the mandatory formula contained in ERISA Section 4219. 29 U.S.C. § 1399.

Plaintiff, of course, is well aware of this mandatory statutory limit on liability. As set forth in ¶ 14 of Plaintiff's Complaint:

> 14. By letter to Defendant, dated June 21, 2006, the Fund Administrator notified Defendant of their withdrawal liability to the Fund in the amount of $372,472.00 and established a schedule for the payment of withdrawal liability, with interest on that payment, as required by ERISA Section 4219 (29 U.S.C. § 1399). That schedule provided that Defendant pay $652.00 per month for 240 months resulting in a total payment of $127,761.00, the twenty-year repayment plan limit under ERISA Section 4219(c)(1)(B). The first payment was due on July 16, 2006.

There is no dispute that DISA has fully complied at all times with Plaintiff's demand to make monthly payments of $652.00. Compl. ¶¶ 14,16; Answer ¶¶ 14, 16. Nevertheless, in January, 2007 one of Defendant's attorneys received a letter from Plaintiff's counsel asserting, without explanation or authority, that "an error" had been made and that the required monthly payment should be $978.00 instead of $652.00. Compl. ¶ 15; Answer ¶ 15, Ex. A. This is no small change in Plaintiff's position and Defendant's potential liability. Spread out over the requisite 20-year period, DISA's total liability at $652.00/month would be $156,480; its total liability at $978.00/month would be $234,720. In other words, the rather perfunctory letter from Plaintiff's counsel dated January 24, 2007 (seven months after the initial Notice and Demand letter was served on DISA) sought to increase Defendant's liability by exactly 50%, or $78,240.

2

Defendant responded to this letter and asked Plaintiff to explain its position, to answer a series of questions, and to provide documents supporting Plaintiff's new position. Answer ¶ 15, Ex. B. These requests were essentially ignored, except for an even more perfunctory letter from Plaintiff's counsel in which the 50% increase was attributed to a mere "transportation error" on the part of the pension fund. Compl. ¶ 15; Answer ¶ 15, Ex. C.

There were no further communications between the parties on the issue. Answer ¶ 15. Then, after twelve more months had passed, Plaintiff filed its Complaint, without any notice to DISA, seeking enforcement of its new demand for increased monthly payments.

## II. ARGUMENT

### A. PLAINTIFF HAS NO AUTHORITY TO CHANGE ITS POSITION ONCE NOTIFICATION AND DEMAND FOR PAYMENT HAS BEEN SERVED; THEREFORE, PLAINTIFF'S CLAIM FOR SUBSTANTIALLY INCREASED MONTHLY PAYMENTS HAS NO LEGAL FORCE OR EFFECT

The concept of "withdrawal liability" that may be incurred when an employer withdraws from a multiemployer pension plan is strictly a creature of federal statute. The Multiemployer Pension Plan Amendments Act of 1980 (commonly referred to as MPPAA) created the liability and set forth an elaborate and comprehensive statutory formula and procedure for the administration and enforcement of its provisions. This means that multiemployer pension funds like Plaintiff have no inherent or common law powers to "establish" or "calculate" withdrawal liability. Rather, they only have the powers, duties and authority granted to them by the legislature and as contained in MPPAA.

In this respect, ERISA Section 4219(b) expressly sets forth the procedure that must be followed once a withdrawal has occurred. "As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor <u>shall</u>": (1) notify the employer of the amount of

3

liability; (2) notify the employer of the schedule for liability payments; and (3) demand payment in accordance with the schedule. 29 U.S.C. § 1399(b). Conspicuously absent from either Section 4219 or any of the other provisions of MPPAA is any grant of power or authority to the fund to independently change its position once the statutorily mandated Notification and Demand for Payment has been served upon the withdrawing employer.

Indeed the only provision in Section 4219 discussing revisions to the withdrawal amount or the schedule of payments makes clear that any such revisions must, and can only be, initiated by the employer. Section 4219(b)(2) states:

> (A) No later than 90 days after the employer receives the notice described in paragraph (1), the employer--
>
>> (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
>>
>> (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
>>
>> (iii) may furnish any additional relevant information to the plan sponsor.
>
> (B) After a reasonable review of any matter raised, the plan sponsor shall notify the employer of--
>
>> (i) the plan sponsor's decision,
>>
>> (ii) the basis for the decision, and
>>
>> (iii) the reason for any change in the determination of the employer's liability or schedule of liability payments.

29 U.S.C. § 1399(b)(2). Thus, the express language of the statute only authorizes a change in the determination of the employer's liability or schedule of payments <u>in response to</u> the *employer's* request for a review. Plan sponsors are not given any authority to independently change the

4

amount of liability or the schedule of payments.  Moreover, any such review must be initiated within ninety days from receipt of the notice and schedule of payments.  Plaintiff, however, issued its sudden change to DISA's liability and monthly payment amounts more than seven months after it originally sent DISA its Notification and Demand for Payment.  Clearly, even if Section 4219's employer-specific provision were somehow available to plan sponsors, this particular instance of Plaintiff's propensity for delay (which includes Plaintiff's five year delay to notify DISA of any withdrawal liability, Plaintiff's seven month lapse between its initial notice and its unexplained change in calculations, and Plaintiff's year-long failure to communicate with DISA prior to filing the current Complaint) does not fall within the statute's mandatory ninety day period.  Nonetheless, despite the clear absence of any authorization to independently change its position after serving the statutorily mandated Notification and Demand for Payment, that is precisely what Plaintiff now attempts to do by filing its Complaint.

Simply stated, pension plans like Plaintiff have no power or authority to <u>change</u> its determinations or the schedule for liability payments where, as here, the purpose or effect of such change would be to increase the employer's liability.  As such, Plaintiff's "demand" for additional increased monthly payments has no legal force or effect.  Defendant is, therefore, entitled to a judgment in its favor and a dismissal of the Complaint, with prejudice.

    **B.**    **PLAINTIFF'S CLAIM FOR SUBSTANTIALLY INCREASED MONTHLY PAYMENTS VIOLATES ERISA SECTION 4219(c) AND IS <u>UNENFORCEABLE</u>**

The amount of money that DISA may be required to pay each month to Plaintiff is determined strictly and solely by the clear and unambiguous language contained in ERISA Section 4219(c):

5

> [T]he amount of each annual payment shall be the product of:
>
> (1) the average annual number of contribution base units <u>for the period of three consecutive plan years</u>, during the period of ten consecutive plan years ending before the plan year in which the withdrawal occurs, in which the number of contribution base units for which the employer had an obligation to contribute under the plan is the highest, <u>and</u>
>
> (2) the highest contribution rate at which the employer had an obligation to contribute under the plan during the ten years ending with the plan year in which the withdrawal occurs.

29 U.S.C. § 1399(c) (emphasis added).

Plaintiff's own document – the "spreadsheet" attached to Plaintiff's February 15, 2007 letter (Ex. C to Defendant's Answer, attached hereto as Ex. A) – provides the numbers to be plugged into this statutorily mandated formula. Line (h) shows the applicable ten-year period to be 1992-2001. Line (h) also shows the "three year period" to be 1999, 2000 and 2001. The number of "contribution base units" for these years are 0.00 (1999); 40,408,00 (2000); and 52,856,00 (2001).

Simple math reveals the "average annual number of contribution base units" for this <u>three-year period</u> to be $31,008. This is the number that must be multiplied by the employer's "highest contribution rate" pursuant to the statutory formula. Line (j) of Plaintiff's spreadsheet shows that number to be $0.25. As such, the annual payment that DISA may be required to pay, as determined by the mandatory statutory language contained in Section 4219(c), is $7,772 (31,088 x 0.25). That means DISA's required monthly payment is $647.67; <u>i.e.</u>, the amount initially determined by Plaintiff and contained in the Notification and Demand served on Defendant in June, 2008. It is this amount that expressly accords with the clear dictates of Section 4219(c).

6

Plaintiff's spreadsheet also reveals precisely how and why the fund changed its position and now seeks to collect a substantially higher monthly payment. Line (l) purports to show the "highest consecutive three year average" to be $46,632 (<u>not</u> $31,088 as we have already demonstrated to be the proper number required by statute). However, $46,632 is a <u>two</u> <u>year</u> <u>average</u> for the years 2000 and 2001 and *not* a <u>three</u> <u>year</u> <u>average</u> as required by law. This was no mere transposition error, but a deliberate change in position that required calculation.

Simply stated, Plaintiff is not permitted to disregard the statutory mandate of Section 4219(c). Pension funds have no discretion on this point. The clear and unambiguous language of Section 4219(c) <u>requires</u> that a <u>three</u> <u>year</u> <u>average</u> be utilized in calculating the employer's annual payment. Plaintiff's attempt to ignore the statute should be rebuked by this Court. DISA is entitled to a judgment in its favor and a dismissal with prejudice of the Complaint.

### III.  **CONCLUSION**

For the foregoing reasons, DISA respectfully requests that the Court enter an Order granting Defendant's Motion for Judgment on the Pleadings and dismissing Plaintiff's claim against it with prejudice.

Respectfully submitted,

_____/s/_____
William G. Miossi (Bar No. 445265)
Winston & Strawn LLP
1700 K St., NW
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 (fax)

May 30, 2008                                                       Counsel for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of May 2008, I caused a true and correct copy of the foregoing Motion for Judgment on the Pleadings and Memorandum in Support thereof to be served electronically on the following:

>Marc H. Rifkind
>Slevin & Hart, P.C.
>1625 Massachusetts Avenue, NW
>Suite 450
>Washington, D.C. 20036

/s/
William G. Miossi

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL SHOPMEN PENSION FUND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 08-CV-0132 (RCL) |
| | ) | |
| GEORGE FISCHER DISA d/b/a DISA | ) | |
| INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | | |

## **O R D E R**

Upon consideration of the Parties' Cross Motions For Judgment on the Pleadings, and the parties' briefing thereon, the Court orders that:

(1) Defendant's Motion For Judgment on the Pleadings is GRANTED, and

(2) Plaintiffs' allegations and claims against Defendant be and hereby are DISMISSED WITH PREJUDICE.


ORDERED this ___ day of _____.


_____
United States District Court Judge

# EXHIBIT A

NATIONAL SHOPMEN PENSION FUND

Withdrawal Liability for Withdrawals 7/1/2001 through 6/30/2002

| | | |
|---|---|---|
| (a) | Employer | Georg Fisher Disa Inc. |
| (b) | Date of withdrawal | December 31, 2001 |
| (c) | Value of vested benefits | $436,784.00 |
| (d) | Allocated assets | $64,312.00 |
| (e) | Withdrawal liability = (c) - (d) | $372,472.00 |
| (f) | Deductible | $0.00 |
| (g) | Amount to amortize | $372,472.00 |
| (h) | Hours of contributions, fiscal years ended 6/30: | |

| 1992 | 0.00 | 1995 | 0.00 | 1998 | 0.00 | 2001 | 52,856.00 |
| 1993 | 0.00 | 1996 | 0.00 | 1999 | 0.00 | | |
| 1994 | 0.00 | 1997 | 0.00 | 2000 | 40,406.00 | | |

| | | |
|---|---|---|
| (i) | Highest consecutive three-year average hours | 46,632 |
| (j) | Highest contribution rate prior to termination | $0.25 |
| (k) | Required annual payment = (i) X (j) | $11,658.00 |
| (l) | Amortization ratio = g/k = Number of Years | 31.949906 |
| (m) | Largest value in Table Column I which is less and (l) | 10.959078 |
| (n) | Number of years for value (m) | 20 |
| (o) | Amount amortized in (n) years = (k) x (m) | $127,761 |
| (p) | Amount left to amortize = (g) - (o) | $244,711 |
| (q) | Table Column II value for (n) years | 4.247851 |
| (r) | Amount ot amortize in the final year = (p) X (q): show 0 if (n) = 20 | 0 |
| (s) | Quarterly payment = (k) divided by 4 | $2,915 |
| (t) | Adjusted monthly payment = (s)/2.98201 | $978 |
| (u) | Full quarters to pay in final year = (r)/(s), truncate the result (integers only) | 0 |
| (v) | Amount to pay in final quarter (r) - [(u) X (s)] | 0 |
| (w) | Full monthly payments in final quarter = (v)/(t), truncate the result (integers only) | 0.00000 / 0 |
| (x) | Number of full montly payments = [12 x (n)] + [3 x (u)] + (w) | 240 |
| (y) | Final payment = v - [(w) x (t)] | $0.00 |

Employer payment schedule:

$978 per month for    240 months plus a   final payment    0    $234,720.00   234720.00

Note: Monthly payments are adjusted for interest to be equivalent to quarterly payments (PBGC letter ruling 85-18).

Principle payment based on Total payout

$81,620.00

$122,159.98    $64,233.58

Document Number: 53657    Page 1