IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL SHOPMEN PENSION FUND, et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-CV-0132 (RCL) |
| | ) | |
| GEORG FISCHER DISA d/b/a DISA | ) | |
| INDUSTRIES, INC | ) | |
| | ) | |
| Defendant. | ) | |

## OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant DISA Industries, Inc. ("DISA") opposes Plaintiffs National Shopmen Pension

Fund, et al.'s Motion for Summary Judgment.  In support of its opposition, DISA respectfully

refers the Court to the attached Statement of Disputed Facts and Genuine Issues and its

Memorandum of Points and Authorities.


Respectfully submitted,


_____/s/_____
William G. Miossi (Bar No. 445265)
Winston & Strawn LLP
1700 K St., NW
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 (fax)

June 30, 2008                          Counsel for Defendant



## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June 2008, I caused a true and correct copy of the

foregoing Opposition to Plaintiffs' Motion for Summary Judgment to be served electronically on

the following:

>Marc H. Rifkind
>Slevin & Hart, P.C.
>1625 Massachusetts Avenue, NW
>Suite 450
>Washington, D.C. 20036

_____/s/_____

William G. Miossi

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL SHOPMEN PENSION FUND, et al   ) | |
| ) | |
| Plaintiffs,   ) | |
| ) | |
| v.   ) | No. 08-CV-0132 (RCL) |
| ) | |
| GEORG FISCHER DISA d/b/a DISA   ) | |
| INDUSTRIES, INC   ) | |
| ) | |
| Defendant.   ) | |

## DISA'S STATEMENT OF DISPUTED FACTS AND GENUINE ISSUES

Pursuant to Rule 56 of the Federal Rules of Civil Procedures and Local Rule 56.1,

Defendant DISA Industries, Inc. ("DISA")  hereby submits its Statement of Disputed Facts and

Genuine Issues.  The following paragraphs numbered 1 - 19 are responsive to Plaintiffs National

Shopmen Pension Fund, et al.'s ("Plaintiffs" or "the Fund") Statement of Undisputed Material

Facts, attached to their Motion for Summary Judgment and include, where appropriate,

information relevant to DISA's Opposition.

1.      DISA admits that the Fund is a joint labor-management pension fund established

to provide pension, retirement, and related  benefits to eligible employees of employers who

contribute to the Fund pursuant to various collective bargaining agreements with affiliated

Shopmen's Local Unions of the International Association of Bridge, Structural and Ornamental

Iron Workers, AFL-CIO.

2.      For purposes of this opposition, DISA does not dispute that the Fund is a

multiemployer pension plan.

3.     For purposes of this opposition, DISA does not dispute that the individual Plaintiff Trustees are "fiduciaries" with respect to the Fund and are collectively the "plan sponsor" within the meaning of Section 4001(a)(10)(A) of ERISA, 29 U.S.C. § 1301(a)(10)(A).

4.     DISA admits that the Trustees administer the Fund at 1750 New York Avenue, N.W., Washington, D.C. 20006-5301.

5.     DISA admits that DISA is an employer in an industry affecting commerce within the meaning of Sections 3(5) of ERISA, 29 U.S.C. § 1002(5), and within the meaning of the LMRA.

6.     DISA admits that it was a party to a collective bargaining agreement with Shopmen's Local Union No. 508 of the International Association of Bridge, Structural and Ornamental Iron Workers which required Defendant to make contributions to the Fund for the years 2001 and 2002.

7.     DISA admits that ERISA Sections 4201 through 4225, 29 U.S.C. §§ 1381-1461, establish withdrawal liability for multiemployer plans, and that ERISA Section 4201, 29 U.S.C. 1381, establishes that if an employer withdraws from a multiemployer plan then the employer may be liable for the amount determined to be the withdrawal liability.  DISA further states that pursuant to the procedures set forth in 29 U.S.C § 1401, an employer may challenge this determination, and, as required by federal law, any such challenge must be submitted to arbitration.  DISA states that it has challenged Plaintiffs' determination of its total withdrawal liability and the parties have submitted this dispute to arbitration.

8.     DISA disputes that it effected a "complete withdrawal" from the Fund.  Plaintiffs' statement that DISA effected a "complete withdrawal" from the Fund within the meaning of ERISA Section 4203(a), 29 U.S.C. § 1383(a) is not a statement of fact but is a conclusion of law,

which this Court is not bound to accept as true.[1]  Pursuant to the procedures set forth in 29 U.S.C

§ 1401, DISA has challenged Plaintiffs' determination of its withdrawal liability and, as required

by federal law, the parties have submitted this dispute to arbitration.

9.    DISA admits for purposes of this opposition that the Fund's actuarial consultant,

the Segal Company, calculated the withdrawal liability of DISA.

10.    DISA admits that by letter dated June 21, 2006, the Fund's Adminstrator, A. H.

Higgs ("Higgs") first sent DISA a letter notifying it that the Fund had calculated DISA's

withdrawal liability to be $372,472.00, and establishing a schedule for paying this withdrawal

liability as required by ERISA Section 4219, 29 U.S.C. § 1399.  Miller Decl. at ¶¶ 3-4, Ex. A at

2-3; Malovance Decl. at ¶ 5.  DISA disputes that Higgs included with this letter a copy of the

spreadsheet containing the withdrawal liability computations, including the calculation of the

monthly payment schedule.  The June 21, 2006 letter contained only two attachments:  (1) an

April 15, 2005 letter from the Segal Company to Higgs, informing Higgs that DISA terminated

its performance with the Fund in December 2001, and providing the basis for its calculation of

DISA's total withdrawal liability; and (2) a statement of the Segal Company's actuarial

assumptions for the Fund.  See Miller Decl. at ¶¶ 5-9, Ex. A; Malovance Decl. at ¶¶ 5-6, Ex. B.

Plaintiffs did not send DISA the spreadsheet on June 21, 2006 as part of their initial demand

letter.  Miller Decl. at ¶¶ 8 -9; Ex. A; Malovance Decl. at ¶¶ 5-6 Ex. B.

The June 21, 2006 letter and two attachments identified above were received by Randall

Miller ("Miller"), Secretary/Treasurer of DISA at the time.  Miller Decl. at ¶ 3.  Miller promptly

forwarded all of these materials to DISA's counsel, Winston & Strawn, L.L.P.  Miller Decl. at ¶

---

[1] See Papasan v. Allain, 478 U.S. 265, 286 (1986) (courts are not bound to accept as true a legal
conclusion couched as a factual allegation); Alexis v. District of Columbia, 44 F. Supp. 2d 331,
336-37 (D.D.C. 1999).

10. These items were subsequently received and reviewed by Gregory Malovance, one of the attorneys representing DISA in the instant matter. Malovance Decl. at ¶¶ 1, 4-5.

In connection with its review of Plaintiffs' withdrawal liability calculations, Winston & Strawn retained AON consultants. On September 12, 2006, AON consultants, on behalf of DISA, sent Higgs a letter requesting the production of documents and information. In this letter, DISA <u>expressly requested</u>:

> 8.    A withdrawal liability amortization payment schedule showing the initial balance, each payment and due date, principal and interest components of each payment, and the remaining principal balance after each payment;
>
> 9.    Details relative to the calculation of the quarterly installment, including the contribution base unites for the employer for the 10 plan year period ending before the year of the withdrawal, and the determination of the high 3 year average, and the highest contribution rate at which the employer had an obligation to contribute during the 10 plan years ending with the plan year in which the withdrawal occurs;

Malovance Decl. at ¶¶ 7-9, Ex. C.

Plaintiffs' attorney Marc Rifkind ("Rifkind") responded in October, 2006, by producing 325 pages of documents, and stated that the documents requested in paragraphs 8 and 9 of AON's letter (above) were included. Malovance Decl. at ¶¶ 9-10, Ex. D. The spreadsheet was <u>not</u> produce by Rifkind in October, 2006. Malovance Decl. at ¶ 11.

DISA and its representatives did not receive the spreadsheet until February, 2007, when Rifkind attached it to a letter to Malovance, dated February 15, 2007. This was the <u>first time</u> that Malovance, DISA, or any of DISA's representatives received or saw this spreadsheet. Miller Decl. at ¶ 8; Malovance Decl. at ¶¶ 2-5, Ex. A.

4

11.     DISA admits that the payment schedule in Plaintiffs' initial demand letter dated June 21, 2006 clearly and expressly stated that Defendant was to pay $652.00 per month for 240 months resulting in a total payment of $127,761, the twenty-year repayment plan limit under ERISA Section 4219(c)(1)(B).  DISA also admits that this letter provided that the first payment was due on July 16, 2006.  See Ex. A to Miller Decl. at 2-3.

12.     DISA disputes that Plaintiffs' June 21, 2006 initial demand letter contained a "typographical error" where it explained DISA's monthly payment amount.  This letter clearly and expressly stated that DISA "is to pay $652.00 per month for 240 months….This repayment schedule will result in a total payment of only $127,761 of the full withdrawal liability."  See Ex. A to Miller Decl. at 2.  As explained in detail above in paragraph 10, DISA also disputes that Plaintiffs sent the withdrawal liability spreadsheet with this June 21, 2006 letter.  Moreover, DISA states that the spreadsheet, which was not received until February, 2007, speaks for itself, and clearly demonstrates that DISA's highest consecutive three year contributions consisted of: $52,856.00 (in 2001); $40,408.00 (in 2000); and $0.00 (in 1999).  Malovance Decl. at Ex. A. DISA further states that pursuant to ERISA Section 4219, Plaintiffs are required to calculate the average of these three highest consecutive contributions when determining DISA's withdrawal liability payments, and that this calculation results in monthly installment payments in the amount of $652.00 – the exact amount identified in Plaintiffs' initial demand letter.  29 U.S.C. § 1399(c); Ex. A to Miller Decl. at 2.

13.     DISA admits that beginning on July 16, 2006, DISA began making monthly payments in the amount of $652.00 consistent with the express terms of Plaintiffs' initial demand letter dated June 21, 2006, and have continued to timely make these payments according to this initial demand letter.

14.    DISA admits that counsel for Plaintiffs sent DISA's counsel a letter dated January 24, 2007 claiming that DISA's monthly payment amount should be $978.00 instead of $652.00. Specifically, this letter stated that "[Plaintiffs] determined that it made error [sic] calculating [DISA's] withdrawal liability payment schedule." (Emphasis added.) See Rifkind Decl. at Ex. A, attached to Plaintiffs' Motion for Summary Judgment. DISA also admits that Plaintiffs requested that DISA's counsel instruct DISA to increase its monthly payments and immediately remit and additional $1,956.00. DISA disputes that Plaintiffs made an "error" calculating DISA's withdrawal payment amount of $652.00. DISA further disputes that its monthly payment amount should be $978.00 per month instead of $652.00 per month. Plaintiffs' statement that the monthly payment amount should be $987.00 per month instead of $652.00 is not a statement of fact but is a conclusion of law, which this Court is not bound to accept as true.[2]

15.    DISA admits that its counsel send Plaintiffs' counsel a responsive letter, dated February 7, 2007, in which it requested:

> a detailed explanation from the Fund as to: (1) why it believes that an error was made; (2) how and when this alleged error was discovered; (3) the extent to which the Fund's new calculation of liability involves the exercise of discretion and/or assumptions of any kind; and (4) the authority on which the Fund relies to recalculate withdrawal liability and attempt to collect increased payments.

16.    DISA admits that Plaintiffs' counsel sent a letter dated February 15, 2007 that failed to respond to DISA's above-outlined requests, including its request for any authority supporting Plaintiffs' increased demand for payments, and that Plaintiffs merely stated:

> The National Shopmen Pension Fund office discovered that an error had been made in transposing the monthly payment amount

---

[2] See Papasan v. Allain, 478 U.S. 265, 286 (1986) (courts are not bound to accept as true a legal conclusion couched as a factual allegation); Alexis v. District of Columbia, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999).

> form the spreadsheet, which calculated DISA's withdrawal liability
> payment schedule under ERISA Section 4219, to the Fund's June
> 26, 2006 notice to DISA of its withdrawal liability and the
> statutory payment schedule. A copy of that spreadsheet is
> enclosed. There has been no change, whatsoever, to the Fund's
> calculation of DISA's underlying withdrawal liability.

DISA disputes that Plaintiffs made an "error" in transposing the monthly payment amount from

the spreadsheet. To the extent that Plaintiffs state that they calculated DISA's increased payment

amount pursuant to ERISA Section 4219, DISA disputes this statement and notes that it is not a

statement of fact but is a conclusion of law, which this Court is not bound to accept as true.[3]

DISA also disputes Plaintiffs statement that "there has been no change, whatsoever, to the Fund's

calculation of DISA's underlying withdrawal liability" and notes that Plaintiffs' initial demand

letter dated June 21, 2006, and Plaintiffs' subsequent letter dated January 24, 2007, which

demanded increased payments in the amount of $978.00, speak for themselves. See Miller Decl.

Ex. A at 2-3; Rifkind Decl. at Ex. C, attached to Plaintiffs' Motion for Summary Judgment

17.    DISA admits that it requested arbitration regarding the withdrawal liability

assessment and that arbitration is currently pending. DISA further admits that it has continued to

timely and promptly make its monthly withdrawal payments in the amount of $652.00,

consistent with the express terms of Plaintiffs' initial demand letter.

18.    DISA disputes Plaintiffs' statement that it has underpaid its monthly withdrawal

liability, and notes that this statement is not a statement of fact but is a conclusion of law, which

this Court is not bound to accept as true.[4]

---

[3] See Papasan v. Allain, 478 U.S. 265, 286 (1986) (courts are not bound to accept as true a legal
conclusion couched as a factual allegation); Alexis v. District of Columbia, 44 F. Supp. 2d 331,
336-37 (D.D.C. 1999).
[4] See Papasan v. Allain, 478 U.S. 265, 286 (1986) (courts are not bound to accept as true a legal
conclusion couched as a factual allegation); Alexis v. District of Columbia, 44 F. Supp. 2d 331,
336-37 (D.D.C. 1999).

19.    DISA disputes Plaintiffs' statement that DISA owes Plaintiffs $7,498.00 in delinquent withdrawal liability payments, $3,519.51 in accrued interest (calculated at the rate prescribed by Section 6621 of the Internal revenue Code), and liquidated damages in the amount of $1,499.60 and notes that this statement is not a statement of fact but is a conclusion of law, which this Court is not bound to accept as true.[5]

---

[5] *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (courts are not bound to accept as true a legal conclusion couched as a factual allegation); *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL SHOPMEN PENSION FUND, et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-CV-0132 (RCL) |
| | ) | |
| GEORG FISCHER DISA d/b/a DISA | ) | |
| INDUSTRIES, INC | ) | |
| | ) | |
| Defendant. | ) | |

**DISA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant DISA Industries, Inc. hereby submits its Opposition to Plaintiffs' Motion for

Summary Judgment.

**I.    INTRODUCTION AND SUMMARY**

Defendant DISA Industries, Inc. ("DISA") was a party to a collective bargaining

agreement that required DISA to make contributions to a multiemployer pension fund for the two

years of 2000 and 2001.  DISA's Statement of Disputed Facts ("DISA's Facts") at ¶ 6.  Plaintiffs,

the National Shopmen Pension Fund and its trustees ("Plaintiffs"), represent this multiemployer

pension fund – a pension fund that, notably, has never been under-funded.  DISA's Facts at ¶¶ 1-

3.  In December, 2001, DISA terminated its participation in this fund, after fully satisfying its

obligations by making its required pension contributions in 2000 and 2001.  DISA's Facts at ¶

10; Miller Decl. Ex. A at 2-4.  Nearly five years later on June 21, 2006, with no interim

communication, Plaintiffs sent DISA a statutorily required initial demand letter stating that DISA

owed withdrawal liability in the amount of $372,472.  Id.  This letter also established a schedule

for DISA's installment payments of this liability.  Id.

In their June 21, 2006 initial demand letter, Plaintiffs clearly stated that DISA "is to pay $652.00 per month for 240 months....This repayment schedule will result in a total payment of only $127,761 of the full withdrawal liability." (Emphasis added.)  DISA's Facts at ¶ 11; Miller Decl. Ex. A at 2.  Plaintiffs also acknowledged in this letter that, pursuant to ERISA Section 4219, DISA could not be required to pay more than $127,761 because ERISA imposes a mandatory statutory limit on liability.[1]  Id.  DISA promptly began making its monthly installment payments on July 16, 2006 and has continued to timely and promptly make its installment payments in the amount of $652.00, as expressly directed in Plaintiffs' initial demand letter.  DISA's Facts at ¶¶ 13, 17.

Despite this, and after seven full months during which DISA consistently paid $652.00 per month, Plaintiffs suddenly sent DISA a letter demanding increased monthly payments in an amount of $978.00.  DISA's Facts at ¶ 14; Rifkind Decl. at Ex. A.[2]  This January 24, 2007 letter completely modified the terms of DISA's schedule withdrawal payments and imposed a 50 percent increase in DISA's liability.  See DISA's Mem. in Support of Mot. for J. on Pleadings at 2.  The modified payment demand also plainly contravened ERISA's mandatory formula for calculating installment payments.  See 29 U.S.C. § 1399(c).  Plaintiffs provided no basis for issuing this subsequent demand and provided no authority for modifying DISA's installment payment amount.  DISA's Facts at ¶¶ 14-16; Rifkind Decl. at Exs. A-C.  Instead, in their January 24, 2007 letter, Plaintiffs conveniently claimed that they "made error [sic] in calculating [DISA's] withdrawal liability payment schedule."  DISA's Facts at ¶ 14; Rifkind Decl at Ex. A.

---

[1] ERISA Section 4219 expressly limits the amount that an employer like DISA may be required to pay each month and also expressly states that "the employer's liability shall be limited to the first 20 annual payments" determined by the mandatory formula contained in ERISA Section 4219.  29 U.S.C. § 1399.

[2] Citations to Rifkind Decl. refer to the Declaration of Marc H. Rifkind, which is attached to Plaintiffs' Motion for Summary Judgment.

Yet, as noted above, Plaintiffs had nearly five years to calculate DISA's withdrawal payments, and they accepted seven consecutive monthly payments of $652.00 before suddenly realizing their "error" and demanding increased payments. DISA's Facts at ¶¶ 10, 13, 17; see also Miller Decl. Ex. A at 2-4.

On February 7, 2007, counsel for DISA responded to Plaintiffs increased demand letter and requested that Plaintiff provide a copy of their calculation spreadsheet,[3] and further requested that Plaintiffs provide a detailed explanation as to:

> (1) why it believes that an error was made; (2) how and when this alleged error was discovered; (3) the extent to which the Fund's new calculation of liability involves the exercise of discretion and/or assumptions of any kind; and (4) the authority on which the Fund relies to recalculate withdrawal liability and attempt to collect increased payments.

DISA's Facts at ¶ 15; Rifkind Decl. at Ex. B. Plaintiffs, for their part, failed to respond to DISA's above requests, making no effort to validate what can only be characterized as a unilateral and illegal demand for more money. Instead, on February 15, 2007, Plaintiffs sent a one-paragraph letter to DISA in which they perpetuated their "transposition" story and stated merely that they "discovered that an error had been made in transposing the monthly payment amount from the spreadsheet.....there has been no change, whatsoever, to the Fund's calculation of DISA's underlying withdrawal liability." DISA's Facts at ¶ 16; Rifkind Decl. at Ex. C.

------

[3] Although Plaintiffs stated in their January 24, 2007 letter that they were attaching their calculation of DISA's installment liability payments, the correspondence between the parties indicates that they neglected to do so. Rifkind Decl. at Exs. B-C. As noted in DISA's statement of disputed facts, this was not the first time that Plaintiffs failed to provide a copy of this spreadsheet. DISA's Facts at ¶ 10; Miller Decl.; Malovance Decl. Despite their false representations to this Court to the contrary, Plaintiffs did not attach this spreadsheet to their June 21, 2006 demand letter or provide it in response to DISA's requests for production in October 2006. Id. Instead, the _first_ time that Plaintiffs provided this spreadsheet to DISA or its counsel was February 7, 2007. Id.

Additionally, for the first time, Plaintiffs finally provided their calculation spreadsheet. DISA's Facts at ¶ 10; Miller Decl.; Malovance Decl. This spreadsheet plainly shows that, pursuant to the mandatory formula of ERISA Section 4219(c), DISA's must only pay $652.00 per month in installment liability payments. See 29 U.S.C. § 1399(c); see also Malovance Decl. at Ex. A.

This February 15, 2007 letter was the last correspondence between the parties regarding DISA's monthly installment payment amounts. Plaintiffs made NO effort to provide a legitimate basis for their increased demand. For more than twelve months, Plaintiffs also did not make any further demands for increased payments. Consequently, DISA reasonably understood Plaintiffs year-long silence to be an acknowledgment that they lacked any authority to modify the terms of their initial demand letter or demand increased payments inconsistent with Section 4219. On January 23, 2008, however, without any notice to DISA despite the parties' participation in arbitration about the total amount of withdrawal liability owed, Plaintiffs filed the instant suit.

On May 30, 2008, Plaintiffs filed their motion for summary judgment in an attempt to sustain their meritless claim. Plaintiffs' motion for summary judgment fails, in its entirety, to establish any grounds for granting judgment in their favor. Plaintiffs contend, without support, that they can unilaterally force employers to make increased withdrawal liability payments in an amount that exceeds the scheduled payments provided for in their initial demand letter. This contention is untenable as a matter of law and as a matter of sound and equitable principle. The detailed provisions of ERISA Section 4219 plainly establish that plan sponsors and employers are *both* bound to the terms of an initial demand letter, and make clear that there is a single, and mandatory, formula for calculating withdrawal liability payment amounts. Plaintiffs simply may not ignore these detailed and mandatory provisions. As such, their motion for summary judgment, like their claim itself, lacks legal foundation and must be denied.

II.    **ARGUMENT**

At issue before this Court is the simple application of the clear statutory language of

ERISA Section 4219, part of the Multiemployer Pension Plan Amendments Act of 1980

("MPPAA").  Under the MPPAA, employers who "withdraw" from a multiemployer pension

fund must make installment withdrawal liability payments in an amount determined by the plain

formula of Section 4219(c).[4]  29 U.S.C. § 1399.  The terms of this formula are non-negotiable.

Unlike disputes as to the amount of total withdrawal liability owed, which are properly submitted

to arbitration, the calculation of an employer's monthly installment payments is <u>not</u> subject to

arbitration, and may not be modified by either party.  Thus, although parties to a multiemployer

pension plan may arbitrate a dispute about total withdrawal liability, they may not avoid the

express statutory terms for calculating, demanding, and making installment payments.  <u>See</u> 29

U.S.C. §§ 1399, 1401.  This, however, is exactly what Plaintiffs have attempted to do.  In an

effort to circumvent clear federal law, Plaintiffs have disregarded the express mandates of the

MPPAA and have attempted to alter the entire scheme upon which the MPPAA operates,

dispensing with legal obligations and equitable principles in summary fashion. This simply

cannot stand.

A.    **The Plain Terms of Section 4219(c) Mandate Dismissal of Plaintiffs'**
      **Complaint and Compel Judgment in Favor of DISA**

ERISA Section 4219 imposes discrete obligations upon both employers and plan

sponsors – obligations that each party must follow in order to effect the statute's proper

---

[4] As explained in detail below, Section 4219 (c) contains a <u>mandatory</u> formula for calculating an
employer's monthly installment payments, under which a plan sponsor must determine an
employer's average contribution over **three** consecutive plan years during the ten-year period
prior to withdrawal.  A plan sponsor's demand for payment must accord with this mandatory
formula.

application. Under Section 4219, employers, for their part, must make installment withdrawal liability payments in an amount determined by the mandatory of Section 4219(c). 29 U.S.C. § 1399(c). Employers generally may not modify their payment amount, but instead must pay according to this formula and the terms of a plan sponsor's initial demand letter. 29 U.S.C. §§ 1399, 1401. DISA has fully complied with this obligation. Plaintiffs sent DISA an initial demand letter on June 21, 2006, demanding that DISA "pay $652.00 per month for 240 months." Miller Decl. Ex. A at 2-3. As Plaintiffs themselves note, DISA has made these monthly payments in accordance with the express terms of Plaintiffs' initial demand letter. See Plaintiffs' Statement of Undisputed Material Facts ("SUF") at ¶ 13; Plaintiffs' Mem. at 3.[5]

Plaintiffs, on the other hand, have repeatedly failed to comply with their mandatory obligations under the MPPAA. First, Plaintiffs failed to promptly notify DISA of its withdrawal liability and demand payment. Pursuant to Section 4219, plan sponsors must send an initial demand letter to a withdrawing employer, "as soon as practicable," notifying the employer of its withdrawal liability and establishing a schedule for installment payments. 29 U.S.C. § 1399(b)(1). This prompt notice provision is central to the MPPAA's purpose of preventing multiemployer pension funds from suffering financial distress. E.g., T.I.M.E.-DC, Inc. v. Management –Labor Welfare & Pension Funds, 756 F.2d 939, 946 (2d Cir. 1985). Plaintiffs did not act in prompt fashion. Instead, they waited nearly five years to send DISA an initial demand letter. DISA's Facts at ¶ 10; Miller Decl. Ex. A at 2-4. This inexcusable delay belies any urgency for funds that Plaintiffs now attempt to assert.[6]

---

[5] Plaintiff's Memorandum in Support of its Motion for Summary judgment is cited as "Plaintiffs' Mem."

[6] After first waiting five years to notify DISA of its withdrawal liability, Plaintiffs then waited a full seven months to raise the "typographical" error that they now assert as the basis for their Complaint. DISA's Facts at ¶ 14. During this time, DISA relied on Plaintiffs' initial demand

Second, Plaintiffs have flouted the clear and unambiguous mandate of Section 4219(c).

Section 4219(c) requires plan sponsors to use a specific formula for calculating an employer's

installment payments. Specifically, Section 4219(c) states that:

> "the amount of each annual payment [owed by an employer for effecting a
> complete withdrawal] shall be the product of –
>
> (I) the average annual number of contribution base units for the period of
> 3 consecutive plan years, during the period of 10 consecutive plan years
> ending before the plan year in which the withdrawal occurs, in which the
> number of contribution base units for which the employer had an
> obligation to contribute under the plan is the highest, and
>
> (II) the highest contribution rate at which the employer had an obligation
> to contribute under the plan during the 10 plan years ending with the plan
> year in which the withdrawal occurs.[7]

29 U.S.C. § 1399(c).

This mandatory formula is the _only_ formula provided for calculating an employer's

installment payments. The statute does not provide _any_ alternative methods. Instead, plan

sponsors must use the three-year average outlined above to calculate an employer's installment

liability. Plaintiffs have flatly disregarded this mandatory formula and have attempted to impose

their own method for calculating DISA's installment payment amounts. Quite simply, instead of

---

letter and consistently paid $652.00 per month to the fund. Additionally, as DISA explained in
its motion for judgment on the pleadings, Plaintiffs waited yet another full year after raising this
purported "error" to file the instant suit, without attempting to confer in the interim about the
amount of DISA's liability payments. See DISA's Mem. in Support of Mot. for J. on Pleadings
at 3. Plaintiff's sudden demand for additional money and their protestations of "irreparable
harm" therefore are disingenuous. Rather than bring a legitimate Complaint, it seems that
Plaintiffs – who manage a fund that has _never_ been under-funded, and who have exhibited
significant delay and non-responsiveness – filed their instant suit only to exert pressure on DISA
while arbitration proceeds. To the extent that Plaintiffs assert an equitable argument in their
motion for summary judgment, it is foreclosed by these telling facts.
[7] Section 4219 (c) also includes a twenty year amortization limit, under which an employer's
annual installment payments are capped at twenty years. Employers therefore are not required to
pay any withdrawal liability owed in excess of this twenty-year cap. 29 U.S.C. §
1399(c)(1)(A)(i).

using the three-year average required by Section 4219(c), Plaintiffs used a two-year average to re-calculate DISA's installment payment amounts and attempt to extract additional money from DISA.

A few calculations makes this clear.  A review of the spreadsheet first provided by Plaintiffs in February 2007[8] indicates that DISA's three highest consecutive contributions to Plaintiffs' plan consisted of:  $52,856.00 (in 2001); $40,408.00 (in 2000); and $0.00 (in 1999). DISA's Facts at ¶ 12; Malovance Decl. at Ex. A.  Thus, the three-year average for these contribution amounts is $31,088.  Using Section 4219(c)'s statutorily mandated three-year average, DISA owes $652.00 per month – the exact amount demanded in Plaintiffs' initial demand letter.  Plaintiffs second letter, however, demands $978.00 per month from DISA.  As noted in this January 24, 2007 letter, sent seven month later without explanation, Plaintiffs re-calculated DISA's installment liability payments.[9]  This new calculation, however, uses a two-year average, accounting for only the two contributions of $52,856 and $40,408, and entirely ignoring the third-year contribution amount of $0.00.  Plaintiffs' demand for $978.00 thus plainly contravenes Section 4219(c).  As even the most cursory reading of Section 4219(c) makes clear, plan sponsors simply do not have any discretion regarding the calculation of an employer's installment payment amounts.  Instead, they must apply the express formula of Section 4219(c). Plaintiffs' increased demand for $978.00 is therefore both unauthorized and patently unlawful.

Because this unauthorized change in calculation is the basis for Plaintiffs' increased demand, Plaintiffs' motion for summary judgment must be denied and its Complaint must be

_____

[8] See Miller Decl.; Malovance Decl.
[9] Although Plaintiffs subsequently attempt to describe their increased demand for payment as the result of a mere "transposition" error, Plaintiffs state in their January 24, 2007 letter that "[the] Fund has determined that it made error [sic] in calculating [DISA's] withdrawal liability payment schedule." (Emphasis added.)

dismissed. The clear statutory mandate of Section 4219(c) thus effectively ends the current dispute.

      **B.**    **Plaintiffs Motion For Summary Judgment Should Be Denied Because *Plaintiffs*, And Not DISA, Have Failed To Comply With The Express <u>Terms of Section 4219 And The "Pay Now, Arbitrate Later" Rule</u>**

              **1.**    **The "Pay Now, Arbitrate Later" Rule Applies To Plan Sponsors As Well As Employers, And Thus Plaintiffs' Motion For Summary <u>Judgment Must Be Denied</u>**

Despite the clear language of Section 4219, and Plaintiffs' equally clear demand for $652.00 per month in their initial demand letter, Plaintiffs now attempt to force increased payments upon DISA. Plaintiffs have provided no authority for this unilateral change. Indeed, there is no such authority. The plain terms of Section 4219 do not permit parties to alter the mandatory formula for calculating installment payments or modify the installment schedule set in an initial demand letter. <u>See</u> 29 U.S.C. § 1399. This lack of authority, in a statute laid down in meticulous detail, could not be more clear. <u>See</u> <u>e.g.</u>, <u>T.I.M.E</u>, 756 F.2d at 946. Plaintiffs therefore cannot suddenly escalate DISA's installment payments.

Plaintiffs do not even attempt to provide a basis for their modification of DISA's installment payments. Instead, they resort to two untenable claims in their motion for summary judgment, both of which are unavailing. First, Plaintiffs suggest that the "pay now, arbitrate later" rule wholly governs this case, yet then claim that this rule somehow does not apply to them. As Plaintiffs noted in their motion for summary judgment, the MPPAA generally operates under a "pay now, arbitrate later" rule. Under this rule, an employer must pay the scheduled installment payments in a plan sponsor's <u>initial</u> demand letter, even though the parties may be arbitrating the amount of total withdrawal liability owed. "Payments shall be made by an employer…until the arbitrator issues a final decision with respect to the determination submitted

for arbitration, *with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination.* 29. U.S.C. § 1401(d) (emphasis added).[10]  As the statute itself makes clear, <u>both</u> employers and plan sponsors are subject to this rule, as payments may neither be adjusted for overpayment or <u>underpayment</u> until arbitration is complete.  Thus, under the "pay now, arbitrate later" rule, <u>NO</u> changes to the amount of an installment payment can be made while arbitration is pending.

DISA does not dispute the general applicability of the "pay now, arbitrate later" rule. Indeed, DISA has <u>fully complied</u> with this rule.  As noted above, Plaintiffs sent DISA a notice of withdrawal liability on June 21, 2006, demanding payment of $652.00 per month.  DISA has consistently made its scheduled payments of $652.00, even while the parties have arbitrated the total withdrawal liability owed.  DISA's Facts at ¶ 13, 17.  At no point has DISA attempted to withhold payments or pay an amount other than that specifically demanded in Plaintiffs' initial demand letter.  DISA has therefore acted in perfect conformity with the "pay now, arbitrate later" rule.

*Plaintiffs*, on the other hand, have failed to comply with the very rule they so emphatically assert.  In their motion for summary judgment, Plaintiffs claim that, despite a rule that <u>prohibits modification</u> of installment payments, a plan sponsor can unilaterally <u>modify</u> these installment payment amounts.  Clearly, this position is illogical.  Plaintiffs issued an initial demand letter to DISA that unmistakably demanded installment payments of $652.00 per month. These installment payments were calculated pursuant to the express terms of Section 4219(c) and are binding on Plaintiffs as well as DISA.  <u>See</u> 29 U.S.C. §§ 1399(c), 1401(d).  Despite this, and

---

[10] <u>See also</u> <u>Connors v. Brady-Cline Coal Co.</u>, 668 F. Supp. 5, 7 (D.D.C. 1987); <u>Robbins v. Pepsi-Cola Metropolitan Bottling Co.</u>, 800 F.2d 641 (7th Cir. 1986) ("the MPPAA require[s] that *initial* withdrawal liability assessments be paid almost immediately after demand, even though a dispute remains over the propriety of the amount assessed" (emphasis added).

without authority, Plaintiffs have attempted to modify DISA's installment payments, in a manner inconsistent with the mandatory formula of Section 4219(c).  This plainly violates the "pay now, arbitrate later" rule.

Moreover, Plaintiffs' one-sided and contorted application of the "pay now, arbitrate later" rule leads to unsustainable results.  Under Plaintiffs position, a plan sponsor could issue a modified demand requiring an employer to pay millions of dollars each month, and employers would have to sit by, defenseless, and pay.  Such unilateral modifications are not sanctioned by the plain provisions of MPPAA or the "pay now, arbitrate later" rule.

Instead, the law makes clear that _NO changes_ may be made to an employer's installment payments while disputes about withdrawal liability are arbitrated.  See 29. U.S.C. § 1401(d), supra; 29 U.S.C. § 1399(c)(2); see also I.A.M. Nat'l Pension Fund Benefit Plan  A, A Benefits v. Clinton Engines Corp., 825 F.2d 415, 417 (D.C. Cir. 1987), ("_any_ dispute over withdrawal liability as determined under the enumerated statutory provisions _shall_ be arbitrated" (emphasis in original); T.I.M.E., 756 F.2d at 947 ("the fact that [a] _new plan or the employer_ disputes the amount [demanded by an old plan's initial demand letter] does not relieve the employer of its obligation to _pay the withdrawal liability according to the schedule set by the [old] plan_").  As these cases and the unambiguous terms of the MPPAA demonstrate, the "pay now, arbitrate later" rule applies in uniform fashion to plan sponsors and employers alike.  Employers therefore need only pay the installment amounts demanded in a plan sponsor's initial demand letter, which must be calculated pursuant to Section 4219(c).  The law could not be more clear on this point.

Thus, because DISA has fully complied with the "pay now, arbitrate later" rule and has satisfied its obligations under the MPPAA, Plaintiffs' motion for summary judgment must fail. Additionally, because Plaintiffs, rather than DISA, have attempted to modify the payment

schedule in direct contravention with the express terms of the MPPAA, this Court should grant
judgment in DISA's favor.

**2.     Plaintiffs Cannot Save Their Meritless Claim By Characterizing A
Calculated Change In Position As A Mere "Transposition Error"**

Recognizing that they lack any legal basis to ignore the express provisions of the
MPPAA, Plaintiffs attempt to curry favor with the Court by characterizing their unlawful
demand as a mere "typographical" or "transposition" error.  See Plaintiffs' Facts at ¶ 12;
Plaintiffs' Mem. at 2; Rifkind Decl. at Ex. C.  Yet, as with Plaintiffs' claim for unilateral
modification itself, this purported reason for demanding increased installment payments, even if
true, fails to sustain Plaintiffs' claims for judgment.

As DISA has already demonstrated, the only installment payments that it must make are
payments in the amount specified in Plaintiff's initial demand letter.  This is true both because:
(1) this $652.00 amount comports with the mandatory formula of Section 4219(c), whereas
Plaintiffs' demand for $978.00 does not; and (2) Plaintiffs carry the burden to properly calculate
installment payment amounts and, as such, are bound by the terms of their initial demand letter.
As the Supreme Court has explained, "[t]he Act does not call upon the employer to propose the
amount of withdrawal liability.  Rather, it places the calculation burden on the plan's trustees.
The trustees must set an installment schedule and demand payment '[a]s soon as practicable' after
the employer's withdrawal."  Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar
Corp., 522 U.S. 192, 197 (1997); 29 U.S.C. § 1399(b)(1).  Plaintiffs' protestations of a
"transposition" error therefore do not vitiate their obligations under Section 4219.  Plaintiffs were
required to issue a demand letter that calculated DISA's installment payment amounts in
accordance with Section 4219(c).  On June 21, 2006, they did so, and they are bound by the
terms of this initial demand letter – terms which, as noted above, Plaintiffs spent nearly five

12

years developing before finally sending DISA a notice of withdrawal liability. Plaintiffs cannot now disregard an unambiguous federal law and paint their actions as a transposition error simply because it garners more money.

Moreover, Plaintiffs' attempt to depict their increased demand as a mere transposition error is a misrepresentation of the plain facts underlying their unauthorized conduct. Plaintiffs have repeatedly claimed that they increased DISA's installment payments because they "discovered that an error had been made in transposing the monthly payment amount from the spreadsheet…to the Fund's June 26, 2006 notice to DISA of its withdrawal liability." Rifkind Decl. at Ex. C. Plaintiffs' also stated that "[t]here has been no change, whatsoever, to the Fund's calculation of DISA's underlying withdrawal liability." Id. Yet Plaintiffs' January 24, 2007 letter, in which they first made their demand for increased payments, belies these patently false statements. In their January 2007 letter, Plaintiffs plainly stated that they "made error [sic] in calculating DISA Industries, Inc.'s withdrawal liability payment schedule." Rifkind Decl. at Ex. A (emphasis added). Thus, by Plaintiffs' own admission, a re-calculation, rather than a transposition error, created their newly increased demand. This unlawful re-calculation, however blatantly disregards Section 4219(c), and is therefore incapable of sustaining Plaintiffs' claim for relief or their motion for summary judgment. Consequently, this Court should enter judgment in DISA's favor.

## III.    CONCLUSION

For the foregoing reasons, DISA respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment and enter an Order granting Defendant's Motion for Judgment on the Pleadings and dismissing Plaintiff's claim with prejudice.

Respectfully submitted,


_____/s/_____
William G. Miossi (Bar No. 445265)
Winston & Strawn LLP
1700 K St., NW
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 (fax)

June 30, 2008                              Counsel for Defendant



-14-

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 30th day of June 2008, I caused a true and correct copy of the foregoing Opposition to Plaintiffs' Motion for Summary Judgment, Statement of Disputed Facts and Genuine Issues, and Memorandum of Points and Authorities in Support of DISA's Opposition to Plaintiff's Motion for Summary Judgment to be served electronically on the following:

>   Marc H. Rifkind
>   Slevin & Hart, P.C.
>   1625 Massachusetts Avenue, NW
>   Suite 450
>   Washington, D.C. 20036

_____/s/_____
William G. Miossi

DC:562091.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NATIONAL SHOPMEN PENSION FUND, et al.  )
                                   )
            Plaintiffs,        )
                                   )
  v.                            )
                                   )  No. 08-CV-0132 (RCL)
                                 )
GEORGE FISCHER DISA d/b/a DISA  )
INDUSTRIES, INC.,             )
                                 )
            Defendant.

**O R D E R**

Upon consideration of Plaintiffs' Motion For Summary Judgment, Defendant's

Opposition thereto, and the parties' briefing thereon, the Court orders that:

(1)    Plaintiffs' Motion for Summary Judgment is DENIED, and

(2)    Summary Judgment and/or Defendant's Motion for Judgment on the Pleadings is

GRANTED in favor of Defendant, DISA Industries, Inc., and

(2)    Plaintiffs' allegations and claims against Defendant be and hereby are

DISMISSED WITH PREJUDICE.

ORDERED this ___ day of _____.

_____
The Honorable Royce C. Lamberth
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL SHOPMEN PENSION FUND, et al   )
                                                   )
          Plaintiffs,                     )
                                                   )
          v.                           )     No. 08-CV-0132 (RCL)
                                                   )
GEORG FISCHER DISA d/b/a DISA       )
INDUSTRIES, INC                     )
                                                   )
          Defendant.              )

## DECLARATION OF RANDALL A. MILLER

I, Randall A. Miller, declare under oath, pursuant to 28 U.S.C. § 1746:

1.  I am over the age of twenty-one and make this Declaration based upon facts within my personal knowledge.

2.  In June 2006 I was the Secretary/Treasurer of DISA Industries, Inc ("DISA").

3.  On June 21, 2006, I received a letter from A. H. Higgs ("Higgs"), the Administrator of the National Shopmen Pension Fund (the "Fund"), notifying DISA of its alleged withdrawal liability to the Fund.  Marc Rifkind, Fund Counsel was a carbon copy recipient of this letter and its attachments.  A true and correct copy of this letter is attached hereto as pages 2-3 of Exhibit A.

4.  In this letter, the Fund established a schedule for DISA's payment of its withdrawal liability, which the Fund had determined to be $372,472.00.  Specifically, the Fund stated that:

> Annual payments are based on a statutory formula and are to be paid in equal monthly installments (with interest at an annual rate of 7.5%) over a period of years necessary to amortize the liability.  Georg Fisher Disa, Inc's repayment schedule, therefore is as follows:  Employer is to pay $652.00 per month, for 240 months….This repayment schedule will result in a total payment of only $127,761 of the full withdrawal liability. ERISA Section 4219(c)(1)(B) limits the liability [of] the company to a twenty year repayment plan.  Accordingly, your company is not obligated to pay the full amount of the liability.

Ex. A at 2.

5. The Fund also sent two attachments to this letter. The first of these attachments was an April 15, 2005 letter from the Segal Company to Higgs. In this April 15, 2005 letter, the Segal Company informed Higgs that DISA terminated its performance with the Fund in December 2001. The Segal Company also outlined the basis for its calculation of DISA's withdrawal liability. A true and correct copy of this letter is attached hereto as pages 4-5 of Exhibit A.

6. The second attachment to the Fund's June 21, 2006 letter was a statement of the Segal Company's actuarial assumptions for the Fund. This statement was itself an attachment to the Fund's April 15, 2005 letter. A true and correct copy of this statement is attached hereto as page 6 of Exhibit A.

7. These two attachments were the only attachments to the Fund's June 21, 2006 initial demand letter to DISA. No other attachments, and no other documents of any kind whatsoever, were provided.

8. Specifically, the Fund did not include or attach any spreadsheet calculating DISA's monthly withdrawal liability payments. I have since reviewed this spreadsheet, a true and correct copy of which is attached hereto as Exhibit B, and can confirm that it was not included among the materials sent by the Fund with its June 21, 2006 letter.

9. The Fund's initial notice to DISA of its withdrawal liability therefore consisted only of: (1) the June 21, 2006 letter; (2) the Segal Company's April 15, 2005 letter; and (3) the Segal Company's statement of actuarial assumptions for the Fund.

10. On June 23, 2006, after receiving and reviewing the Fund's letter and attachments, I promptly faxed these materials to DISA's outside legal counsel, Winston & Strawn, L.L.P. A true and correct copy of this facsimile is attached hereto as Exhibit A. Exhibit A represents all of the items that I received from the Fund on June 21, 2006.

I declare under penalty of perjury that all of the statements made here are true and correct.

Executed on June 27, 2008.

_Randall A. Miller_

Randall A. Miller



FAX: 312-558-5700

Winston & Strawn                                    June 23, 2006

Pages included: 5

cc:

Attn:  Debra Boling

Re:  National Shopmen Pension Fund Letter

Dear Debra:

Enclosed is a letter from the National Shopmen Pension Fund concerning a withdrawal
from the fund for our former location in Holly, Michigan.

Please give me a call after reading it.


Sincerely,
DISA Industries, Inc.

Randall a. Miller

Randall A. Miller
Secretary/Treasurer




**Disa Industries, Inc.**
80 Kendall Point Drive
Oswego, IL  60543
U.S.A..


Tel:      630/820-3000
Fax:     630/820-9672
Parts:   630/820-9743
disasales@disaoswego.com




**EXHIBIT A**

 **National Shopmen Pension Fund**

Suite 401 ▪ 1750 New York Avenue, N.W.  Washington, D.C. 20006-5301
Telephone No: (202) 383-4874 ▪ Fax No. (202) 628-8469

**VIA CERTIFIED MAIL**

June 21, 2006

Disa, Inc.
80 Kendall Point Drive
Oswego, IL  60543

Re:  Withdrawal Liability Determination and Demand for Payment:
     George Fisher Disa, Inc. , Employer No. 598,SLU No. 508

Dear Sir or Madam:

The Trustees of the National Shopmen Pension Fund (hereafter "Fund") hereby notify you of George Fischer Disa, Inc.'s withdrawal liability to the Fund and demand payment thereof.  The Fund's records indicate that Georg Fischer Disa, Inc. withdrew from the Fund as of December 2001.

The Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, requires that withdrawal liability be assessed against contributing employers who withdraw from the Fund after September 26, 1980 (29 U.S.C. Section 1381).  Withdrawal liability is determined by allocating a portion of the Fund's unfunded vested benefits ("UVBs") to the withdrawing employer pursuant to one of the methods authorized by ERISA. The method adopted by the Trustees of the Fund is the "attributable rule".  A withdrawn employer's liability under the attributable rule is the sum of: (1) the difference between the UVBs of its employees and its allocated share of the Fund's assets; and (2) a proportional share of the Fund's UVBs that are not allocated to any contributing employer. The Trustees of the Fund have directed the Fund's actuaries, The Segal Company, to calculate Georg Fischer Disa, Inc.'s withdrawal liability.  The amount of the liability has been determined to be $372,472.00. A copy of their assumptions used in this calculation is enclosed.

ERISA requires the Trustees to establish a schedule for the payment of withdrawal liability. Annual payments are based on a statutory formula and are to be paid in equal monthly installments (with interest at an annual rate of 7.5%) over a period of years necessary to amortize the liability.  Georg Fischer Disa, Inc.'s repayment schedule, therefore, is as follows:  Employer is to pay $652.00 per month for 240 months.  The Fund hereby demands that you begin payment in accordance with the schedule no later than July 16, 2006.  This repayment schedule will result in a total payment of only $127,761 of the full withdrawal liability.  ERISA Section 4219 (c)(1)(B) limits the liability f the company to a twenty-year repayment plan.  Accordingly, your company is not obligated to pay the full amount of the liability.

Document #: 53658

Georg Fischer Disa, Inc.
June 21, 2006
Page 2

You may, if you wish, pay the entire amount due, without penalty.   Payments must be made notwithstanding any request for review of the withdrawal liability.

A withdrawn employer may, no later than 90 days after receipt of this letter, request a review of the determination, identify any inaccuracy in the Fund's determination of withdrawal liability which may exist, or furnish additional relevant information.

This letter constitutes notice of the withdrawal liability to Georg Fischer Disa, Inc. and all groups of trades or businesses under common control or common ownership with Georg Fischer Disa, Inc., The Fund hereby demands that you provide within 30 days the names, addresses, and officer names of any and all corporations, companies or entities within the common control group of Georg Fischer Disa, Inc. or under common ownership of the stockholders of Georg Fischer Disa, Inc..  Georg Fischer Disa, Inc. is required to provide this information to the Fund within 30 days by 29 U.S.C. Section 1399.

If the Fund is required to bring suit to collect withdrawal liability, the withdrawn employer also becomes liable for interest, liquidated damages (in the amount of 20% of the amount due), and all costs of collection, including attorneys' fees.

We trust that payments will begin as scheduled.  If you have any questions about this matter, do not hesitate to contact the Fund Office.

Sincerely,

A.H. Higgs, Jr.
Administrator

AHH/nd
Enclosure
cc: Marc Rifkind, Fund Counsel
    SLU #508

Document #: 53858

06/23/2006 14:10 FAX  6308209672          DISA INDUSTRIES INC                    ☑004/006



## SEGAL

THE SEGAL COMPANY
1920 N Street NW  Suite 400  Washington, DC 20036-1659
T 202.833.6464  F 202.833.6490  www.segalco.com

Lorraine R. Bergstresser, MAAA, EA
Vice President & Actuary
lbergstresser@segalco.com

April 15, 2005

Mr. A. H. Higgs, Jr.
Administrator
National Shopmen Pension Fund
1750 New York Avenue, NW, Suite 701
Washington, DC  20006



RECEIVED
APR 1 8 2005
NAT'L SHOPMEN
PENSION FUND

Re:    **Withdrawal Liability Calculation for**
       Georg Fischer Disa, Inc.
       Employer No. 598, SLU No. 508

Dear Mr. Higgs:

Based on the data provided by your office dated January 3, 2005, we have calculated the withdrawal liability for the employer named above.

Since the termination of participation occurred as of December 2001, the calculations are based on factors and assumptions as of June 30, 2001, the last plan year ended before withdrawal.

The withdrawal liability in this case consists of the following:

| | | |
|---|---|---|
| 1. | Present value of vested benefits attributable to participation by Georg Fischer Disa, Inc. in the National Shopmen Pension Plan | $436,784 |
| 2. | Allocated share of assets of the National Shopmen Pension Plan | 64,312 |
| 3. | Unfunded vested benefits attributable to Georg Fischer Disa, Inc.: (1) – (2), not less than zero | $372,472 |
| 4. | Amount of obligation excused under the de minimis provisions | -0- |
| 5. | Withdrawal liability payable: (3) – (4) | $372,472 |

Benefits, Compensation and HR Consulting  ATLANTA  BOSTON  CHICAGO  CLEVELAND  DENVER  HARTFORD  HOUSTON  LOS ANGELES  MINNEAPOLIS
NEW ORLEANS  NEW YORK  PHILADELPHIA  PHOENIX  SAN FRANCISCO  SEATTLE  TORONTO  WASHINGTON, DC

Multinational Group of Actuaries and Consultants  AMSTERDAM  BARCELONA  GENEVA  HAMBURG  JOHANNESBURG  LONDON  MELBOURNE
MEXICO CITY  OSLO  PARIS

06/23/2006 14:11 FAX  6308209672          DISA INDUSTRIES INC                    Ø005/006

Mr. A. H. Higgs, Jr.
April 15, 2006
Page 2

Please note that for purposes of this calculation:

1.   Vesting service and benefit improvements through the withdrawal date (12/2001) are
     used in the determination of the present value of vested benefits.

2.   The benefit service used in the determination of the present value of vested benefits is as
     of June 30, 2001.

3.   Contributions made and benefits paid after June 30, 2001 have not been considered in the
     allocation of assets.

A statement of the assumptions used in our calculations is enclosed.

Sincerely,

Lorraine R. Bergstresser
Enrolled Actuary No. 05-5255

/vm
Attachment

626147/01684.005

06/23/2006 14:11 FAX  6308209672        DISA INDUSTRIES INC                      ☑006/008

**ACTUARIAL ASSUMPTIONS FOR
NATIONAL SHOPMEN PENSION FUND
WITHDRAWAL LIABILITY**

In the absence of PBGC assumptions, the Trustees are using the Fund's actuary's "best estimate" assumptions, as follows:

1.  Investment Return

    (a)  To the extent benefits are matched by the market value of plan assets on hand, vested benefits are valued on interest assumptions prescribed by the Pension Benefit Guaranty Corporation under 29 C.F.R. Part 4044 that are in effect for the applicable withdrawal liability valuation date plus .75%.  The rates are as follows:

    |                                        | As of June 30, 2001 |
    |----------------------------------------|---------------------|
    | Interest rate for first 20 years       | 7.35%               |
    | Interest rate for subsequent years     | 7.00%               |

    (b)  The portion of the vested benefits that is not matched by plan assets is valued on the interest assumption used for plan funding as of the applicable withdrawal liability valuation date.  As of June 30, 2001, this rate was 7.50%.

    (c)  The portion of the vested benefits that is matched by assets will be determined by comparing the total present value of benefits — at PBGC rates plus .75% — with the total market value of assets; each vested benefit will be treated as covered by assets to the same extent as all other vested benefits.

2.  Mortality

    1983 Group Annuity Mortality Table for healthy lives;
    1983 Railroad Retirement Board Disabled Annuitants Table for disabled lives.

3.  Expenses

    Calculated as prescribed by PBGC formula (PBGC Reg. Part 4044, Appendix C)

4.  Retirement Age

    For asset allocations and plan-wide withdrawal liability present value determination

    From active service -- Age 59, or completion of service requirement, if later.

    From inactive vested status -- Either first age eligible for an unreduced pension, or 55 if eligible for 3% per year early retirement reduction.

    For individual withdrawal liability present value determinations

    From inactive vested status -- Either first age eligible for an unreduced pension, or 55 if eligible for 3% per year early retirement reduction.

5.  Assets

    Valued at fair market value as reported in the Plan's audited financial statements without withdrawal liability receivables.

**NATIONAL SHOPMEN PENSION FUND**

Withdrawal Liability for Withdrawals 7/1/2001 through 6/30/2002

| (a) | Employer | ............ | Georg Fisher Disa Inc. |
|---|---|---|---|
| (b) | Date of withdrawal | ............ | December 31, 2001 |
| (c) | Value of vested benefits | ............ | $436,784.00 |
| (d) | Allocated assets | ............ | $64,312.00 |
| (e) | Withdrawal liability = (c) - (d) | ............ | $372,472.00 |
| (f) | Deductible | ............ | $0.00 |
| (g) | Amount to amortize | ............ | $372,472.00 |

(h)     Hours of contributions, fiscal years ended 6/30:

| 1992 | 0.00 | 1995 | 0.00 | 1998 | 0.00 | 2001 | 52,656.00 |
|---|---|---|---|---|---|---|---|
| 1993 | 0.00 | 1996 | 0.00 | 1999 | 0.00 | | |
| 1994 | 0.00 | 1997 | 0.00 | 2000 | 40,408.00 | | |

| (i) | Highest consecutive three-year average hours | 46,632 |
|---|---|---|
| (j) | Highest contribution rate prior to termination | $0.25 |
| (k) | Required annual payment = (i) X (j) | $11,658.00 |
| (l) | Amortization ratio = g/k = Number of Years | 31.949906 |
| (m) | Largest value in Table Column I which is less end (l) | 10.959078 |
| (n) | Number of years for value (m) | 20 |
| (o) | Amount amortized in (n) years = (k) x (m) | $127,761 |
| (p) | Amount left to amortize = (g) - (o) | $244,711 |
| (q) | Table Column II value for (n) years | 4.247851 |
| (r) | Amount of amortize in the final year = (p) X (q): | 0 |
|  | show 0 if (n) = 20 | |
| (s) | Quarterly payment = (k) divided by 4 | $2,915 |
| (t) | Adjusted monthly payment = (s)/2.98201 | $978 |
| (u) | Full quarters to pay in final year = (r)/(s), truncate | |
|  | the result (integers only) | 0 |
| (v) | Amount to pay in final quarter (r) - [(u) X (s)] | 0 |
| (w) | Full monthly payments in final quarter = (v)/(t), | 0.00000 |
|  | truncate the result (integers only) | 0 |
| (x) | Number of full montly payments = [12 x (n)] + [3 x (u)] + (w) | 240 |
| (y) | Final payment = v - [(w) x (t)] | $0.00 |

Employer payment schedule:

| $978 per month for | 240 months plus a | final payment | 0 | $234,720.00 | 234720.00 |
|---|---|---|---|---|---|

Note: Monthly payments are adjusted for interest to be equivalent to quarterly payments (PBCG letter ruling 85-18).

Principle payment based on Total payout

| | $81,620.00 | |
|---|---|---|
| | $122,159.98 | $64,233.58 |

Document Number: 53557                     Page 1

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL SHOPMEN PENSION FUND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 08-CV-0132 (RCL) |
| | ) | |
| GEORGE FISCHER DISA d/b/a DISA | ) | |
| INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

<u>**DECLARATION OF GREGORY J. MALOVANCE**</u>

I, Gregory J. Malovance, pursuant to 28 U.S.C. § 1746, declare:

1.      I am one of the attorneys representing DISA Industries, Inc. in connection with the subject matter of this lawsuit.

2.      In or around February, 2007 I received a letter from Marc Rifkind, one of the Plaintiff's attorneys.  A one-page document described by Rifkind as a "spreadsheet" was enclosed.  A copy of Rifkind's letter dated February 15, 2007 and the enclosed "spreadsheet" is attached hereto as Exhibit A.

3.      When I received Exhibit A, this was the first time I had ever seen the spreadsheet that was enclosed.

4.      I first became involved in this matter in June, 2006 when Randall A. Miller, Secretary/Treasurer of DISA Industries, Inc., sent a six (6) page fax to our office.  A copy of this fax is attached hereto as Exhibit B.

5.      On the same day that I received this fax, I spoke with Randall Miller about the subject matter of the documents he had sent to our office.  Miller told me that the letter dated June 21, 2006 from A. H. Higgs, Jr. (pages 2 and 3 of Exhibit B) was the first notice that DISA

had received from Plaintiff asserting a claim for withdrawal liability. Miller also told me that the fax (Exhibit B) contained everything DISA had received from Plaintiff.

6.     The spreadsheet enclosed with Rifkind's February 15, 2007 letter (Exhibit A) was not included in the six (6) page fax sent to my office.

7.     To assist me in evaluating the merits of Plaintiff's claim for withdrawal liability, we retained AON as a consultant. On or about September 12, 2006 AON sent a letter to A. H. Higgs, Jr., the Administrator of Plaintiff, National Shopmen Pension Fund, requesting the production of certain documents and other information. A copy of this letter is attached hereto as Exhibit C.

8.     Among other things, Plaintiff was specifically and expressly asked to produce:

> 8.     A withdrawal liability amortization payment schedule showing the initial balance, each payment and due date, principal and interest components of each payment, and the remaining principal balance after each payment;
>
> 9.     Details relative to the calculation of the quarterly installment, including the contribution base units for the employer for the 10 plan year period ending before the year of the withdrawal, the determination of the high 3 year average, and the highest contribution rate at which the employer had an obligation to contribute during the 10 plan years ending with the plan year in which the withdrawal occurs;

9.     In or around October, 2007 I received a letter from Plaintiff's counsel, Marc Rifkind, that was represented to be a response to AON's September 12, 2006 letter. A copy of Rifkind's response dated October 17, 2006 is attached hereto as Exhibit D. Also

included with Rifkind's letter were 325 pages of documents that Rifkind represented to me as being fully responsive to AON's requests.

10.     Specifically with respect to the documents requested in paragraphs 8 and 9 of AON's letter, Rifkind asserted: "The documents you requested are included."

11.     The spreadsheet that was sent to me by Rifkind in February, 2007 (Exhibit A) was <u>not</u> produced by Rifkind in October, 2006. The spreadsheet is <u>not</u> one of the 325 pages of documents that were produced at that time.

I declare under penalty of perjury that all of the statements made here are true and correct.

Gregory J. Malovance

Dated: 6/25/08

*2/22/2007 - Received*
*Emailed G. Malovance.*

# SLEVIN & HART, P.C.

Attorneys at Law
1625 Massachusetts Avenue, N.W., Suite 450
Washington, D.C. 20036
(202) 797-8700
Fax (202) 234-8231

MARC RIFKIND
Member of the Firm

Writer's Direct Dial:  (202) 797-2203
Mrifkind@slevinhart.com

February 15, 2007

Gregory Malovance
Winston & Strawn, LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Re:    DISA Industries, Inc – Withdrawal Liability Assessment

Dear Mr. Malovance:

    This letter responds to yours dated February 7, 2007.  The National Shopmen Pension Fund office discovered that an error had been made in transposing the monthly payment amount from the spreadsheet, which calculated DISA's withdrawal liability payment schedule under ERISA Section 4219, to the Fund's June 26, 2006 notice to DISA of its withdrawal liability and the statutory payment schedule. A copy of that spreadsheet is enclosed.  There has been no change, whatsoever, to the Fund's calculation of DISA's underlying withdrawal liability.

Sincerely,

Marc Rifkind

MHR:msj:150.206

Enclosure

cc:    A.H. Higgs, Jr., Administrator
      Natalie Duritsa

33730

**EXHIBIT A**

NATIONAL SHOPMEN PENSION FUND

Withdrawal Liability for Withdrawals 7/1/2001 through 6/30/2002

| | | | |
|---|---|---|---|
| (a) | Employer | .................................................................................................... | Georg Fisher Disa Inc. |
| (b) | Date of withdrawal | .................................................................................................... | December 31, 2001 |
| (c) | Value of vested benefits | .................................................................................................... | $436,784.00 |
| (d) | Allocated assets | .................................................................................................... | $64,312.00 |
| (e) | Withdrawal liability = (c) - (d) | .................................................................................................... | $372,472.00 |
| (f) | Deductible | .................................................................................................... | $0.00 |
| (g) | Amount to amortize | .................................................................................................... | $372,472.00 |

(h) Hours of contributions, fiscal years ended 6/30:

| 1992 | 0.00 | 1995 | 0.00 | 1998 | 0.00 | 2001 | 52,856.00 |
|---|---|---|---|---|---|---|---|
| 1993 | 0.00 | 1996 | 0.00 | 1999 | 0.00 | | |
| 1994 | 0.00 | 1997 | 0.00 | 2000 | 40,408.00 | | |

| | | |
|---|---|---|
| (i) | Highest consecutive three-year average hours | 46,632 |
| (j) | Highest contribution rate prior to termination | $0.25 |
| (k) | Required annual payment = (i) X (j) | $11,658.00 |
| (l) | Amortization ratio = g/k =Number of Years | 31.949906 |
| (m) | Largest value in Table Column I which is less and (l) | **10.959078** |
| (n) | Number of years for value (m) | **20** |
| (o) | Amount amortized in (n) years = (k) x (m) | $127,761 |
| (p) | Amount left to amortize = (g) - (o) | $244,711 |
| (q) | Table Column II value for (n) years | **4.247851** |
| (r) | Amount ot amortize in the final year = (p) X (q): | 0 |
| | show 0 if (n) = 20 | |
| (s) | Quarterly payment = (k) divided by 4 | $2,915 |
| (t) | Adjusted monthly payment = (s)/2.98201 | $978 |
| (u) | Full quarters to pay in final year = (r)/(s), truncate | |
| | the result (integers only) | 0 |
| (v) | Amount to pay in final quarter (r) - [(u) X (s)] | 0 |
| (w) | Full monthly payments in final quarter = (v)/(t), | 0.00000 |
| | truncate the result (integers only) | 0 |
| (x) | Number of full montly payments = [12 x (n)] + [3 x (u)] + (w) | 240 |
| (y) | Final payment = v - [(w) x (t)] | $0.00 |

Employer payment schedule:

| | | | |
|---|---|---|---|
| $978 per month for | 240 months plus a   final payment | 0 | $234,720.00 | 234720.00 |

Note: Monthly payments are adjusted for interest to be equivalent to quarterly payments (PBCG letter ruling 85-18).

Principle payment based on Total payout

|  |  |
|---|---|
| $81,620.00 | |
| $122,159.98 | $64,233.58 |



FAX: 312-558-5700

Winston & Strawn                                    June 23, 2006

Pages included: 5

cc:

Attn: Debra Boling

Re: National Shopmen Pension Fund Letter

Dear Debra:

Enclosed is a letter from the National Shopmen Pension Fund concerning a withdrawal from the fund for our former location in Holly, Michigan.

Please give me a call after reading it.


Sincerely,
DISA Industries, Inc.

Randall A. Miller
Secretary/Treasurer




**Disa Industries, Inc.**
80 Kendall Point Drive
Oswego, IL  60543
U.S.A..


Tel:      630/820-3000
Fax:     630/820-9672
Parts:   630/820-9743
disasales@disaoswego.com




**EXHIBIT B**



# National Shopmen Pension Fund

Suite 401 • 1750 New York Avenue, N.W. Washington, D.C. 20006-5301
Telephone No: (202) 383-4874 • Fax No. (202) 628-6469

. **VIA CERTIFIED MAIL**

June 21, 2006

Disa, Inc.
80 Kendall Point Drive
Oswego, IL  60543

<u>Re:  Withdrawal Liability Determination and Demand for Payment:
 George Fisher Disa, Inc. , Employer No. 598,SLU No. 508</u>

Dear Sir or Madam:

The Trustees of the National Shopmen Pension Fund (hereafter "Fund") hereby notify you of George Fischer Disa, Inc.'s withdrawal liability to the Fund and demand payment thereof.  The Fund's records indicate that Georg Fischer Disa, Inc. withdrew from the Fund as of December 2001.

The Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, requires that withdrawal liability be assessed against contributing employers who withdraw from the Fund after September 26, 1980 (29 U.S.C. Section 1381).  Withdrawal liability is determined by allocating a portion of the Fund's unfunded vested benefits ("UVBs") to the withdrawing employer pursuant to one of the methods authorized by ERISA. The method adopted by the Trustees of the Fund is the "attributable rule". A withdrawn employer's liability under the attributable rule is the sum of:  (1) the difference between the UVBs of its employees and its allocated share of the Fund's assets; and (2) a proportional share of the Fund's UVBs that are not allocated to any contributing employer.  The Trustees of the Fund have directed the Fund's actuaries, The Segal Company, to calculate Georg Fischer Disa, Inc.'s withdrawal liability.  The amount of the liability has been determined to be $372,472.00. A copy of their assumptions used in this calculation is enclosed.

ERISA requires the Trustees to establish a schedule for the payment of withdrawal liability.  Annual payments are based on a statutory formula and are to be paid in equal monthly installments (with interest at an annual rate of 7.5%) over a period of years necessary to amortize the liability.  Georg Fischer Disa, Inc.'s repayment schedule, therefore, is as follows:  Employer is to pay $652.00 per month for 240 months.  The Fund hereby demands that you begin payment in accordance with the schedule no later than July 16, 2006.  This repayment schedule will result in a total payment of only $127,761 of the full withdrawal liability.  ERISA Section 4219 (c)(1)(B) limits the liability f the company to a twenty-year repayment plan.  Accordingly, your company is not obligated to pay the full amount of the liability.

Document #: 53659

Georg Fischer Disa, Inc.
June 21, 2006
Page 2


You may, if you wish, pay the entire amount due, without penalty.  Payments must be made notwithstanding any request for review of the withdrawal liability.

A withdrawn employer may, no later than 90 days after receipt of this letter, request a review of the determination, identify any inaccuracy in the Fund's determination of withdrawal liability which may exist, or furnish additional relevant information.

This letter constitutes notice of the withdrawal liability to Georg Fischer Disa, Inc. and all groups of trades or businesses under common control or common ownership with Georg Fischer Disa, Inc.. The Fund hereby demands that you provide within 30 days the names, addresses, and officer names of any and all corporations, companies or entities within the common control group of Georg Fischer Disa, Inc. or under common ownership of the stockholders of Georg Fischer Disa, Inc.. Georg Fischer Disa, Inc. is required to provide this information to the Fund within 30 days by 29 U.S.C. Section 1399.

If the Fund is required to bring suit to collect withdrawal liability, the withdrawn employer also becomes liable for interest, liquidated damages (in the amount of 20% of the amount due), and all costs of collection, including attorneys' fees.

We trust that payments will begin as scheduled.  If you have any questions about this matter, do not hesitate to contact the Fund Office.

Sincerely,

A.H. Higgs, Jr.
Administrator

AHH/nd
Enclosure
cc:  Marc Rifkind, Fund Counsel
     SLU #508

Document #: 53858

 **SEGAL**

THE SEGAL COMPANY
1920 N Street NW  Suite 400  Washington, DC 20036-1659
T 202.833.6464  F 202.833.6490  www.segalco.com

Lorraine R. Bergstresser, MAAA, EA
Vice President & Actuary
lbergstresser@segalco.com

April 15, 2005



Mr. A. H. Higgs, Jr.
Administrator
National Shopmen Pension Fund
1750 New York Avenue, NW, Suite 701
Washington, DC  20006

Re:   **Withdrawal Liability Calculation for**
Georg Fischer Disa, Inc.
Employer No. 598, SLU No. 508

Dear Mr. Higgs:

Based on the data provided by your office dated January 3, 2005, we have calculated the withdrawal liability for the employer named above.

Since the termination of participation occurred as of December 2001, the calculations are based on factors and assumptions as of June 30, 2001, the last plan year ended before withdrawal.

The withdrawal liability in this case consists of the following:

| | | |
|---|---|---:|
| 1. | Present value of vested benefits attributable to participation by Georg Fischer Disa, Inc. in the National Shopmen Pension Plan | $436,784 |
| 2. | Allocated share of assets of the National Shopmen Pension Plan | 64,312 |
| 3. | Unfunded vested benefits attributable to Georg Fischer Disa, Inc.: (1) – (2), not less than zero | $372,472 |
| 4. | Amount of obligation excused under the de minimis provisions | -0- |
| 5. | Withdrawal liability payable: (3) – (4) | $372,472 |

Benefits. Compensation and HR Consulting  ATLANTA  BOSTON  CHICAGO  CLEVELAND  DENVER  HARTFORD  HOUSTON  LOS ANGELES  MINNEAPOLIS
NEW ORLEANS  NEW YORK  PHILADELPHIA  PHOENIX  SAN FRANCISCO  SEATTLE  TORONTO  WASHINGTON, DC

 Multinational Group of Actuaries and Consultants  AMSTERDAM  BARCELONA  GENEVA  HAMBURG  JOHANNESBURG  LONDON  MELBOURNE
MEXICO CITY  OSLO  PARIS

06/23/2008 09:11 FAX 6506229572          DISA INDUSTRIES INC                    ☑005/006

Mr. A. H. Higgs, Jr.
April 15, 2005
Page 2

Please note that for purposes of this calculation:

1.  Vesting service and benefit improvements through the withdrawal date (12/2001) are
    used in the determination of the present value of vested benefits.

2.  The benefit service used in the determination of the present value of vested benefits is as
    of June 30, 2001.

3.  Contributions made and benefits paid after June 30, 2001 have not been considered in the
    allocation of assets.

A statement of the assumptions used in our calculations is enclosed.

Sincerely,

Lorraine R. Bergstresser
Enrolled Actuary No. 05-5255

/vm
Attachment

626147/01684.005

06/23/2008 MON 11:12 FAX 8906209672          UISA INDUSTRIES INC          ☑ 006/006

**ACTUARIAL ASSUMPTIONS FOR**
**NATIONAL SHOPMEN PENSION FUND**
**WITHDRAWAL LIABILITY**

In the absence of PBGC assumptions, the Trustees are using the Fund's actuary's "best estimate" assumptions, as follows:

1.    Investment Return

     (a)    To the extent benefits are matched by the market value of plan assets on hand, vested benefits are valued on interest assumptions prescribed by the Pension Benefit Guaranty Corporation under 29 C.F.R. Part 4044 that are in effect for the applicable withdrawal liability valuation date plus .75%. The rates are as follows:

|  | As of June 30, 2001 |
|---|---|
| Interest rate for first 20 years | 7.35% |
| Interest rate for subsequent years | 7.00% |

     (b)    The portion of the vested benefits that is not matched by plan assets is valued on the interest assumption used for plan funding as of the applicable withdrawal liability valuation date. As of June 30, 2001, this rate was 7.50%.

     (c)    The portion of the vested benefits that is matched by assets will be determined by comparing the total present value of benefits — at PBGC rates plus .75% — with the total market value of assets; each vested benefit will be treated as covered by assets to the same extent as all other vested benefits.

2.    Mortality

1983 Group Annuity Mortality Table for healthy lives;
1983 Railroad Retirement Board Disabled Annuitants Table for disabled lives.

3.    Expenses

Calculated as prescribed by PBGC formula (PBGC Reg. Part 4044, Appendix C)

4.    Retirement Age

For asset allocations and plan-wide withdrawal liability present value determination

     From active service -- Age 59, or completion of service requirement, if later.

     From inactive vested status --    Either first age eligible for an unreduced pension, or 55 if eligible for 3% per year early retirement reduction.

For individual withdrawal liability present value determinations

     From inactive vested status --    Either first age eligible for an unreduced pension, or 55 if eligible for 3% per year early retirement reduction.

5.    Assets

Valued at fair market value as reported in the Plan's audited financial statements without withdrawal liability receivables.



*Employee Benefits Consulting*

September 12, 2006

Mr. A.H. Higgs, Jr.
Administrator
National Shopmen Pension Fund
1750 New York Avenue, NW, Suite 701
Washington, DC 20006

**Re: *National Shopmen Pension Fund: DISA Industries, Inc. Withdrawal Liability***

Dear Mr. Higgs:

Aon Consulting has been engaged to review the withdrawal liability assessment by the National
Shopmen Pension Fund (the "Fund") with respect to DISA Industries, Inc. ("DISA").

In this regard, we would very much appreciate receiving the following information:

1.  Current plan document and any amendments in effect as of 6/30/2001;

2.  A copy of the audited financial statements for the plan year ending 6/30/2001;

3.  Form 5500's for the plan years ending 6/30/2001 and 6/30/2002;

4.  The actuarial report for the plan years ending 6/30/2001 and 6/30/2002 prepared for
    minimum funding purposes under IRC §412;

5.  Confirmation that:  a)  the date of the withdrawal was 12/31/2001; and b)  that the
    withdrawal was not a partial withdrawal;

6.  An actuarial report or exhibit setting forth the following:

    a.  Total vested benefits and assets used to figure the unfunded vested benefits
        (UVB) for all employers as of 6/30/2001 for withdrawal liability purposes. (The
        same for 6/30/2000 and 6/30/2002 also);

    b.  A detailed development of Fund assets: i)  allocable to all contributory employers
        as of 6/30/2001; and ii) allocable to just DISA;

    c.  A listing (or file) setting forth, on a participant-by-participant basis, the vested
        benefits and components of the calculation of such (history of hours worked per
        year, etc...) attributable to service with DISA as of and through 6/30/2001; and

    d.  A detailed development of the amount of unfunded vested benefits not
        attributable to contributory employers as of 6/30/2001.

**EXHIBIT C**

*Employee Benefits Consulting*

Mr. A.H. Higgs, Jr.
September 12, 2006
Page 2

7.  Any document(s) relating to withdrawal liability procedures not already provided;

8.  A withdrawal liability amortization payment schedule showing the initial balance, each payment and due date, principal and interest components of each payment, and the remaining principal balance after each payment;

9.  Details relative to the calculation of the quarterly installment, including the contribution base units for the employer for the 10 plan year period ending before the year of the withdrawal, the determination of the high 3 year average, and the highest contribution rate at which the employer had an obligation to contribute during the 10 plan years ending with the plan year in which the withdrawal occurs; and

10. Outstanding claims for withdrawal liability as of 6/30/2001.

In addition, if there has been an Asset Sale or Purchase related to the Fund within the last ten years, please call to discuss.

Lastly, please note that due to time constraints, we felt it necessary to issue this request letter as quickly as possible. As a result, we may have some follow-up requests.

If you have any questions, please call me at (248) 936-5483. Thank you very much for your assistance in this important regard.

Sincerely,

Aon Consulting, Inc.

*Samuel S. Stanley* (kko.

Samuel S. Stanley, F.S.A.
Senior Vice President

cc: Randall Miller
    Greg Malovance

W:\2006\DB\DISA\Corr\Withdrawal Liability Data Req Ltr.doc

TOTAL P.03

# SLEVIN & HART, P.C.

**Attorneys at Law**
1625 Massachusetts Avenue, NW, Suite 450
Washington, DC 20036
202/797-8700
FAX: 202/234-8231

MARC RIFKIND
Member of the Firm

Writer's Direct Dial: (202) 797-2203
Mrifkind@slevinhart.com

October 17, 2006

Gregory Malovance
Winston & Strawn, LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

> Re:    DISA – Withdrawal Liability Assessment

Dear Mr. Malovance:

The firm is Fund Counsel to the National Shopmen Pension Fund. This letter responds to your information request dated September 12, 2006. The Fund responses are listed seriatim according to the order of your questions.

1.    A copy of the Plan document with amendments through 6/30/01 is enclosed;

2.    A copy of the audited financial statement for the Plan year ending 6/30/01 is enclosed;

3.    The Forms 5500 for the Plan year ending  6/30/01 and 6/30/02 are enclosed;

4.    It is the Fund policy not release the entire actuarial report to withdrawn employers. Please let me know what information does not appear on the Schedule B to the Form 5500 you require from the actuarial report.

5.    DISA withdrew in a complete withdrawal in December 2001.

6.    The documents you requested are enclosed.

7.    The Fund's withdrawal liability procedures are in Article 8 of the Plan.

8.    The documents you requested are enclosed.

9.    The documents you requested are enclosed.

**EXHIBIT D**

**DISA000001**

Gregory Malovance
October 17, 2006
Page 2

10.    The information you requested is enclosed.

Please direct any further communications regarding this matter to my attention.

                                        Sincerely,

                                        Marc Rifkind

MHR:msj:150.206

Enclosures

cc:    A.H. Higgs, Jr., Administrator
       Lorraine Bergstresser, MAAA, EA

H:\Clients\0150\206\Aon ltr

DISA000002