UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL SHOPMEN PENSION FUND, <u>et, al.</u> | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 08-0132 (RCL) |
| GEORG FISCHER DISA d/b/a DISA INDUSTRIES, INC., | ) ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION**

This matter comes before the Court on plaintiffs' Motion [9] for Summary Judgment and defendant's Cross-Motion [10] for Judgment on the Pleadings. Upon full consideration of the motions, the oppositions and replies thereto, the applicable law, and the entire record herein, the Court finds, for the reasons set forth below, that plaintiffs' motion for summary judgment will be DENIED, defendant's motion for judgment on the pleadings will be GRANTED and plaintiffs' complaint will be dismissed with prejudice.

**I.   BACKGROUND**

   **A.   Statutory Framework**

The Employee Retirement Income Security Act of 1974 ("ERISA") Sections 4201-4225, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub. L. No. 96-364, 94 Stat. 1208, 29 U.S.C. §§ 1381-1461, provides that an employer who withdraws from a multiemployer pension plan must make withdrawal liability payments sufficient to cover that employer's fair share of the plan's unfunded vested liabilities. 29 U.S.C. §§ 1381, 1391.

The Act's withdrawal liability payment requirement protects the financial integrity of multiemployer plans, prevents withdrawing employers from shifting their burdens to remaining employers, and eliminates an incentive for employers to flee underfunded pension plans. *See Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 416 (1995); *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 216 (1986); *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722-23 (1984).

As a general matter, an employer completely withdraws from a plan when it "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." § 1383(a). The amount of withdrawal liability and the periodic payment schedule for paying that liability are determined as of statutorily-specified dates calculated from the date of complete withdrawal. *Schlitz*, 513 U.S. at 417-18, 430, citing §§ 1391(b)(2)(A)(ii), (b)(2)(E)(i), (c)(2)(C)(i), (c)(3)(A), and (c)(4)(A).

The statute sets out a series of mandatory steps to be followed in collecting the withdrawal liability. The MPPAA places responsibility for assessing and collecting withdrawal liability on the plan sponsor, usually a joint labor-management board of trustees. § 1382, § 1002(16)(B). Under ERISA Section 4219(b), "as soon as practicable" after an employer's withdrawal from the plan, the plan sponsor must determine the employer's withdrawal liability, if any, prepare a statutorily-mandated schedule for payment of that liability in installments, notify the employer of the amount of the liability and the payment schedule, and "demand payment in accordance with the schedule." §§ 1382, 1399(b)(1).

The plan's actuary determines withdrawal liability through a series of calculations that allocate a portion of the plan's unfunded vested benefits to the withdrawing employer pursuant

to one of the methods authorized by ERISA, including the "attributable rule" adopted by the plaintiffs, which is set forth in ERISA Section 4211(c)(4) (29 U.S.C. § 1391(c)(4). *See* §§ 1388-1391, 1393.  Once the actuary has calculated the withdrawal liability, the plan sponsor must prepare a schedule for the payments by determining the "level annual payments" necessary to amortize that liability, using a mandatory statutory formula for determining the amount of each annual payment as follows:

> [T]he amount of each annual payment shall be the product of:
>
> (1) the average annual number of contribution base units <u>for the period of 3 consecutive plan years</u>, during the period of 10 consecutive plan years ending before the plan year in which the withdrawal occurs, in which the number of contribution base units for which the employer had an obligation to contribute under the plan is the highest, and
>
> (2) the highest contribution rate at which the employer had an obligation to contribute under the plan during the 10 plan years ending with the plan year in which the withdrawal occurs.

29 U.S.C. § 1399(c) (emphasis added).

If the annual payments would stretch past twenty years, the remaining payments are forgiven.  § 1399(c)(1)(B).  Finally, these "level annual payments" are made payable in quarterly installments, or other installment intervals specified by plan rules, such as the monthly payment schedule utilized by the plaintiffs.  § 1399(c)(3).

Having completed the calculations, the plan sponsor then provides the withdrawing employer with the required notice of its withdrawal liability and installment payment schedule. "Withdrawal liability shall be payable in accordance with <u>the</u> schedule set forth by the plan sponsor" in the § 1399(b)(1) notification and demand for payment "beginning no later than 60 days after the date of <u>the</u> demand notwithstanding any request for review or appeal of

3

determinations of the amount of such liability or of <u>the</u> schedule." § 1399(c)(2) (emphasis added).

The only provision in ERISA Section 4219 providing for changes to the determination of the employer's liability or schedule of liability payments after the statutorily mandated notification and demand for payment has been made requires an <u>employer-initiated</u> request for review.  Section 4219(b)(2) states:

> **(A)** No later than 90 days after the employer receives the notice described in paragraph (1), the employer–
>
> > **(i)** may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
> >
> > **(ii)** may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
> >
> > **(iii)** may furnish any additional relevant information to the plan sponsor.
>
> **(B)** After a reasonable review of any matter raised, the plan sponsor shall notify the employer of –
>
> > **(i)** the plan sponsor's decision,
> >
> > **(ii)** the basis for the decision, and
> >
> > **(iii)** the reason for any change in the determination of the employer's liability or schedule of liability payments.

29 U.S.C. § 1399(b)(2).

ERISA further provides that "[a]ny dispute between an employer and the plan sponsor . . . shall be resolved through arbitration," which either or both parties may initiate within specified time periods.  § 1401(a). However, "[p]ayments shall be made by an employer . . . until the

arbitrator issues a final decision with respect to the determination submitted for arbitration, <u>with any necessary adjustments in subsequent payments for *overpayments* or *underpayments*</u> arising out of the decision of the arbitrator with respect to the determination." § 1401(d) (emphasis added).

    **B.**    **Case Background**

Defendant, George Fischer DISA, Inc. d/b/a Disa Industries, Inc. ("defendant"), participated in and contributed to a multi-employer pension plan run by National Shopmen Pension Fund and the individual trustees who serve as fiduciaries with respect to the Fund ("plaintiffs"), during the years of 2000 and 2001 pursuant to DISA's collective bargaining agreement with Shopmen's Local Union No. 508. (Compl. ¶¶ 5-7.) In December 2001, the defendant closed the facility covered by the labor contract, thus potentially affecting a "complete withdrawal" and triggering withdrawal liability under ERISA. (*Id.* ¶ 10.)

More than five years later, on June 21, 2006, the plaintiffs sent the defendant a letter notifying it of withdrawal liability in the amount of $372,472, and setting forth a monthly payment schedule to begin on July 16, 2006 in the amount of $652 per month for 240 months, resulting in a total payment of $127,761 based on ERISA's 20-year repayment plan limit. (*Id.* ¶ 14.) The defendant began making monthly payments in the amount of $652 on the specified due date. (*Id.* ¶ 16.)

By letters dated January 24, 2007 (approximately six months after the defendant began making monthly payments in accordance with the notice and demand letter plaintiffs provided) and February 15, 2007, the plaintiffs notified the defendant of an "error" made in calculating the adjusted monthly payment, and advised defendant to pay $987 per month instead of $652 per

month and to make a lump-sum payment in the amount of $1,956 representing underpayments for the prior six months. (*Id.* ¶ 15.) The letters instructed defendant to increase its monthly payments "in accordance to the statutory payment schedule." (*Id.*)

Subsequent to receipt of these letters, the defendant has continued to make payments in the $652 per month amount. (*Id.* ¶ 16.) Defendant made a timely request for arbitration regarding the withdrawal liability assessment, and the issue is before an arbitrator. (Pls.' Opp'n at 2.)

The plaintiffs filed the instant civil action on January 23, 2008 due to the defendant's failure to make increased interim withdrawal liability payments. Pursuant to ERISA Sections 502, 515, 4221(d) and 4301(b) (29 U.S.C. §§ 1132, 1145 and 1401(d), 1451(b)) and the plaintiffs' Rules and Regulations, they have requested a judgment against the defendant for delinquent withdrawal liability payments, accrued interest at the rate prescribed by Section 6621 of the Internal Revenue Code, liquidated damages equal to 20% of the withdrawal liability, plus reasonable attorney's fees and costs and any amounts becoming due and owing prior to the entry of judgment in this case. (Compl. ¶ 18.)

The defendant's motion for judgment on the pleadings argues: (1) the plaintiffs had no authority to change their position and increase the monthly payment amount once the notification and demand for payment was served; and (2) the plaintiffs' demand for $987 monthly payments violates the express language of ERISA Section 4219(c) and is therefore unenforceable. Plaintiffs' response contends: (1) the issue of the correct monthly payment amount is not before this Court – it is subject to arbitration; and (2) in the meantime, the defendant must pay the amount demanded by the Fund, whose determination under the statute

requires a monthly payment of $978.

## II. DISCUSSION

### A. Judgment on the Pleadings Standard

Any party may move for judgment under Federal Rule of Civil Procedure 12(c) after the "pleadings are closed." Here, the pleadings consist of the complaint [1] and the answer [4]. *See* Fed. R. Civ. P. 7(a) (designating pleadings as a complaint and an answer). Courts will grant a judgment on the pleadings pursuant to Rule 12(c) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations [in the complaint]." *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 66 (D.D.C. 2001) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also* Fed. R. Civ. P. 12(c). "[I]f there are allegations in the complaint which, if proved, would provide a basis for recovery[,]" the Court cannot grant judgment on the pleadings. *Bradley v. Smith*, 235 F.R.D. 125, 126 (D.D.C. 2006) (internal quotation marks and citation omitted).

The standard of review under Rule 12(c) is essentially the same as that for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Plain v. AT & T Corp.*, 424 F. Supp. 2d 11, 20 n. 11 (D.D.C. 2006). This Court will dismiss a claim if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). The Court therefore must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)); *Chang v. United States*, 338 F.Supp.2d 20, 21 (D.D.C. 2004). A

party is generally bound by the admissions and facts alleged in its pleadings. *Rann v. Chao*, 209 F. Supp. 2d 75, 82 (D.D.C. 2002).

However, the Court is not required to accept plaintiffs' asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal*, 16 F.3d at 1276. Nor must the court accept as true the plaintiffs' legal conclusions. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999).

Generally, when a court relies upon matters outside the pleadings, a motion to dismiss must be treated as one for summary judgment and disposed of pursuant to Rule 56. *See* Fed. R. Civ. P. 12(d). "However, where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)). In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.30[4] (3d ed. 1998); *see, e.g., Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (considering pension plan documents that defendant attached to the motion to dismiss part of the pleadings because the documents were referred to in the complaint and were central to plaintiff's claim for benefits under the plan). Here, both the Plaintiffs' Fund Rules and Regulations referred to in the complaint, and a spreadsheet mutually relied on by each party throughout their briefs, fall under this exception because they were attached to the defendant's motion and reply, and the Court will consider them without

converting defendant's motion to one for summary judgment.[1]

### B.     Defendant is Entitled to Judgment on the Pleadings

The issue before the Court is whether the plaintiffs have set forth a claim for which relief can be granted, viewing the allegations in the light most favorable to them, and based on applicable law.  Essentially, plaintiffs claim they are entitled to relief based on the defendant's failure to make monthly interim withdrawal liability payments that exceed the dollar amount specified in the initial notification and demand for payment letter issued by the plaintiffs.  The Court finds that the plaintiffs have not stated a cognizable claim because they are only entitled to interim payments in the amount specified in the initial demand letter, which they admit the defendant has continued to timely pay pending arbitration of the parties' underlying dispute over withdrawal liability.

The Court reaches this decision for a variety of reasons based on interpretation of the governing statutory provisions, applicable law, and equitable considerations given the facts of the case as stated in the plaintiffs' complaint and responsive pleadings.  As an initial matter, the Court finds that the plaintiffs' allegations regarding (1) the $652 per month withdrawal liability demand being the product of a calculation error; and (2) their entitlement to interim withdrawal liability payments in the amount of $987 per month, each constitute legal conclusions derived from statutory interpretations that the Court is not required to accept as true.

---

[1] The defendant's discussion of additional material outside of the pleadings in its motion and reply, such as information derived from various exhibits attached to its answer and the motion for summary judgment filings, nearly required conversion of its motion to one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).  However, the Court has excluded consideration of those documents for the purpose of this opinion, and reaches its decision based on facts drawn solely from the complaint, the plaintiffs' response to the defendant's motion, and the two noted documents, which are integral to the plaintiffs' claim.

The Court does not deny that well-settled law dictates that interim withdrawal liability payments must be made despite the pendency of arbitration – the so-called *pay now, arbitrate later* scheme designed by Congress to secure funds for the pension plan as quickly as possible and resolve disputes later.  § 1401(d); *see also Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 814 F.2d 297 (6th Cir. 1987).  However, the utility of this general statement of the law as applied to the instant matter must be tempered given that cases in this circuit and elsewhere[2] supporting the proposition almost uniformly feature distinguishable factual scenarios where the defendant has either refused to make interim withdrawal liability payments in accordance with the initial, statutorily-mandated notification and demand letter, or for that matter, pay any amount of withdrawal liability whatsoever.  *See, e.g., I.A.M. Nat. Pension Fund Benefit Plan A v. Clinton Engines Corp.*, 825 F.2d 415 (D.C. Cir. 1987); *I.A.M. Nat. Pension Fund Benefit Plan A v. Cooper Industries, Inc.*, 789 F.2d 21 (D.C. Cir. 1986); *I.A.M. Nat. Pension Fund Benefit Plan C v. Stockton Tri Ind.*, 727 F.2d 1204 (D.C. Cir. 1984); *I.A.M. Nat. Pension Fund Plan A v. Pabst Brewing Co.*, 711 F.Supp. 636 (D.D.C. 1988); *Connors v. Brady-Cline Coal Co.*, 668 F.Supp. 5 (D.D.C. 1987); *I.A.M. Nat. Pension Fund Plan A v. Dravo Corp.*, 641 F.Supp. 50 (D.D.C. 1986); *Connors v. Calvert Development Co.*, 622 F.Supp. 877 (D.D.C. 1985).

No such scenario is present in this case.  Here, the plaintiffs admit that the defendant has

---

[2] The cases from other circuits Plaintiffs cite in their response also involve factual scenarios where the defendant refused to pay the initial assessment of withdrawal liability.  *See Central States, Southeast & Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1341-42 (7th Cir. 1992); *Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 115 (7th Cir. 1991).

made, and continues to make, interim withdrawal liability payments in accordance with the amount and schedule specified in the plaintiffs' initial notification and demand for payment letter.  As discussed *infra* in relation to the facially valid calculation of those payments, the defendant had reason to rely on the monthly payment schedule set forth in the initial notification and demand letter it received, and did so when it timely made those payments for six months before the plaintiffs' requested increased payments.  The defendant has continued to pay the amount originally demanded pending arbitration proceedings, which ERISA provides as the proper initial forum for resolution of the underlying withdrawal liability payment dispute at issue in this litigation.  An arbitrator will determine whether or not the defendant owes any withdrawal liability, the appropriate amount of such liability, and based on that decision, whether an adjustment is warranted with the respect to the current $652 per month interim payments being made by the defendant.

Furthermore, the plaintiffs have provided no authority for requesting increased interim payments after the initial notice and demand for withdrawal liability.  The statute only provides for subsequent changes to the initial determination of the employer's payment schedule in response to an <u>employer-requested</u> review within 90 days of the notification and demand for payment.  The plaintiffs do not allege that the defendant requested a review within that 90 day period, which would have provided a statutory basis for altering the amount of the payment demand such that the plaintiffs could seek different interim withdrawal liability payments prior to arbitration.  Instead, as previously stated, the plaintiffs inexplicably waited until they had received six months of payments in the amount they initially demanded before informing the defendant of the alleged calculation error and requesting additional money.  Lacking a

persuasive statutory basis for this tactic, plaintiffs also fail to cite a single case standing for the proposition that a plan is entitled to increased interim withdrawal liability payments under these circumstances, pending arbitration, once an employer has begun paying in accordance with the amount requested in the initial demand.

Moreover, plaintiffs admit that the increased payment request of $987 per month is based on a spreadsheet calculation that uses a two-year period in determining the average annual number of contribution base units. *See* Pls.' Opp'n at 4-5.  The Court acknowledges that determining the appropriate calculation of the underlying withdrawal liability and payment schedule are properly addressed first via arbitration because they "are quintessentially within the expertise of an arbitrator skilled in pension matters." *Connors v. B.M.C. Coal Co.*, 634 F.Supp. 74, 75 (D.D.C. 1986).  However, in ruling on the specific issue before it of whether the plaintiffs have stated a colorable claim for a violation of ERISA's statutory interim payment provision, the Court cannot simply ignore the express language of the mandatory statutory formula provided by ERISA 4219(c) for calculating monthly withdrawal liability payments,[3] or the identical text of the plaintiffs' own Fund Rules and Regulations specifying the exact same means by which that calculation will be made.  *See* Def.'s Reply Ex. A § 8.11(b).

In each instance, the operative language requires that the amount of such payments <u>shall</u> be calculated using a three-year average.  Congress did not provide for the use of alternative

---

[3] Where a statute is plain and clear on its face, it does not permit alternate construction and must be applied according to its express terms.  *See, e.g., Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 254 (2000) ( "In ERISA cases 'as in any case of statutory construction, our analysis begins with the language of the statute.... And where the statutory language provides a clear answer, it ends there as well.'") (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

formulas or discretionary input in making this calculation under ERISA; nor did the Plan when preparing its Rules and Regulations.  Use of this statutory-based three-year average, which would include an amount of $0 for plan year 1999 when the defendant was not yet contributing to the plan,[4] yields a monthly payment amount consistent with the $652 figure specified in the initial notification and demand letter, and inconsistent with the $987 monthly payment subsequently requested by the plaintiffs and upon which their present claim entirely relies.

Let there be no doubt: had the defendant failed to make the $652 per month interim liability payments in accordance with the initial notification and demand letter, pending arbitration, this case would fall squarely within the precedents of this and other circuits and be properly resolved via a judgment in favor of the plaintiffs.  It is beyond cavil that employers must make interim withdrawal liability payments while awaiting arbitration, and "Congress made the requirement that the employer promptly pay its withdrawal liability obligations crystal clear...."  *I.A.M Nat. Pension Fund Ben. Plan A v. Dravo Corp.*, 641 F. Supp. 50, 51 (D.D.C. 1985) (citing *T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds of Local 1730 International Longshoremen's Assoc.*, 756 F.2d 939, 946 (2d Cir. 1985).  The Court is keenly aware that legislative policy considerations favor pension funds as the stakeholders in these disputes.  *See Trustees of Chicago Truck Drivers, et, al. Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 116 (7th Cir. 1991).

However, the Court agrees with defendant's assertion that the oft-cited *pay now,*

---

[4] Plaintiffs' spreadsheet illustrates that the hours of contribution for the relevant three-year period were as follows: 1999 (0.00); 2000 (40,408.00); 2001 (52,856.00).  Inaccurately, Plaintiff nonetheless lists the "[h]ighest consecutive three-year average hours" as 46,632 on the spreadsheet.

*arbitrate later* provision discussed *supra* ought to govern the behavior of both pension plans as well as employers under the present set of facts.  ERISA's arbitration framework should thus be available to employers as a shield in cases like this one – where a defendant has not flatly refused to pay, but instead has made interim liability payments for an extended period of time according to the original notification and demand letter, subsequent demands for increased payments do not appear on their face to be authorized by or in accordance with the express statutory language, and the underlying dispute is pending arbitration.  This is a sensible approach under the language of § 1401(d) because arbitration provides a remedy for the aggrieved party in the form of subsequent payment adjustments where it is determined that the employer has been making *overpayments* or *underpayments*.

To hold that the *pay now, arbitrate later* rule only applies to the employer could conceivably allow pension funds cart blanche to subject employers to a pattern of oppressive behavior including unlimited requests for increased withdrawal liability payments and/or arbitrary demands for plainly excessive monthly payment amounts, with little regard for adherence to the withdrawal liability notification procedure and calculation formula specified in the statute.  Neither of these unjust results appear to have been intended by Congress as a consequence of the current framework of ERISA.  The Court believes the 6th Circuit succinctly captured the appropriate judicial approach for resolving this matter when it made the following remarks in a case involving a similar issue:

> Whether or not the Fund is entitled to adjust its demand on its first assessment, or issue a second assessment, it should only have one opportunity for interim payments.  The statute clearly contemplates a single schedule of interim payments.  "[W]e would find it quite curious if Congress had given multiemployer plans the immense power ... to assess upon a withdrawing employer a

>   substantial penalty while providing the employer with few defenses -- yet did not intend to place some check" upon the exercise of this power. *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund*, 847 F.2d at 121. Allowing plans to issue repeated demands for withdrawal liability, with accompanying interim payments, could lead to abuse. The Fund has had one bite at the interim payment apple, and subsequent nibbles are neither necessary nor appropriate.

*Huber v. Casablanca Industries, Inc.*, 916 F.2d 85 (3rd Cir. 1990) (abrogated on other grounds by *Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414 (1995)).

Based on these specific facts and applicable law, the Court finds that the plaintiffs have failed to state a claim for which relief can be granted, and therefore the complaint must be dismissed.

### III.   CONCLUSION

Upon full consideration of the parties' filings, applicable law, and the record herein, this Court concludes that the defendant's Motion for Judgment on the Pleadings [10] shall be GRANTED.

A separate order shall issue this date.

Signed by Chief Judge Royce C. Lamberth on October 17, 2008.